Nov. Term,
1834.

Adamson
v.
Lamb.

ADAMSON v. LAMB, Administrator.

A gift, by parol, of real estate by *A.* to *B.* his son,—the donee being in posses-
sion and having made improvements,—vests in *B.* no interest in the property,
which a Court of law or equity can recognize.

The estate thus held by *B.* was, with his consent, sold by *A.* to a third person,
*A.* promising *B.* to appropriate a part of the purchase-money to the payment
of a note held by him against *B.* and to pay the balance to *B.* The purchase-
money being received by *A.*, he said that he considered the note paid, and
that he would give it up and pay the balance to *B.;* but he died without again
seeing *B.* *Held,* that these facts were no defence to an action on the note
brought against *B.* by *A's.* administrator.

Tuesday,
December 2.

ERROR to the *Wayne* Circuit Court.

M'KINNEY, J.—*Lamb,* the administrator of *John Adamson,*
deceased, brought suit before a justice of the peace against
*Simon Adamson,* on a note executed by the latter to the intes-
tate. The defendant filed the following account as an off-set
before the justice:—"*John Adamson* to *Simon Adamson,* Dr.
To land bought in the year 1831, (perhaps in the fall,) $100.00.
Credit by off-set with note for $45 at the same time." The
justice rendered judgment in favour of the defendant for 55
dollars. On an appeal to the Circuit Court, the case was
submitted to a jury, and judgment rendered on their verdict
in favour of the plaintiff for 55 dollars and 56 cents.

Several errors are alleged to have been committed by the
Circuit Court: its refusal to give to the jury certain instructions
asked by the defendant constitutes, however, the most impor-
tant, and is that to which our attention will be directed.

The evidence upon which the instructions were predicated
forms a part of the record, from which it appears that, on the
trial, the defendant in support of his plea gave in evidence, that
the intestate had given to the defendant, his son, a tract of land
of which the defendant had possession, and on which he had
made improvements, but without having received a title; that
the defendant afterwards became indebted to the intestate in
the sum of 45 dollars, the foundation of this suit, and being
unable to pay the same, it was agreed that the intestate should
sell the land alleged to have been given by him to the defend-
ant, retain of the proceeds the sum of 45 dollars, and pay the

balance to the defendant; that the intestate accordingly sold the land, for which he received 100 dollars, and on receipt of the purchase-money said he considered the note paid, and would give it up and pay to the defendant in money, or other land, the residue of the money he had received; that immediately thereafter, the intestate died without having seen the defendant or given up the note, or paid to him the balance of the purchase-money.

Upon this evidence, the defendant moved the Court to instruct the jury, "That if they believed from the evidence, that the intestate sold the land regarding it as the defendant's, though the defendant had no title, and by his the defendant's consent, to pay the debt due to the intestate, and to pay the residue of the proceeds to the defendant; and that the intestate sold the land for 100 dollars, and received the money by consent of the defendant, and applied 45 dollars of it to the payment of the debt for which this suit is brought, declaring it was a payment, and that he would give up the defendant's note, and pay to him the balance of the money; and that the intestate considered the debt paid, and never accounted for any part of the price of the land,—it amounts to payment if so considered by the intestate." The Court refused this instruction, but charged the jury, "That it could not amount to a payment at all, there being no valuable consideration passing from the defendant to the intestate for the land."

The defence relied upon by the plaintiff in error, as shown by the record, arises from an alleged parol gift of land by the father to the son, the subsequent sale of the land by the father by the consent of the son, to pay a debt due by the son to the father, and the father's undertaking to pay the son the difference between the debt due to him and the sum the land would bring.

It appears to be conceded, that the plaintiff in error could not in equity, from the absence of consideration, have enforced a specific performance of the contract for the conveyance of the land; neither could he, at law, have availed himself of such contract as a defence to an action of ejectment, brought by the intestate or his vendee. With this concession, it is difficult to perceive in what manner a change affecting the parties, either legally or equitably, is produced by the consent to the sale of the land. The consent could not impart authority to sell, from

Nov. Term,
1834.

ADAMSON
v.
LAMB.

the fact that there was no legal or equitable interest, to pass which the consent was necessary. The sale by the intestate was the mere exercise of his unquestionable right, as the legal owner of the land. No consideration is alleged to have passed either originally, or at the period of the sale; and we know of no principle of law, that, in the absence of consideration, com-- pels the performance of a naked promise.

If the previous possession of the land, coupled with the improvements made, and the parol gift, would not constitute the intestate a trustee for the conveyance of the legal title, we cannot discover how he becomes a trustee for the application of the proceeds of the land, on its sale by consent. This latter position is, however, assumed and relied upon in support of the instructions refused to be given by the Circuit Court. But to this it may be answered, that the constitution of a fund for the payment of a debt, or as the source of pecuniary or other proceeds, cannot be valid without a legal or equitable right, neither of which, over the fund in question, was possessed by the plaintiff in error.

The contracts, the first for the conveyance of the land, and the second for the application of its proceeds, rest upon the same foundation; and neither is available from the absence of consideration. The law is considered as settled, that a contract founded on the consideration of blood only, to convey land, would not be sufficient to create a trust or a use under the statute, unless by deed, and, consequently, would not be enforced in equity. The principle is also as well settled, that, independently of the statute of frauds, such contracts are inoperative as well at law as in equity (1).

We are therefore of the opinion, that the Circuit Court was correct in refusing to give the instruction asked, and that in the charge it gave, there appears no ground of exception.

*Per Curiam.*—The judgment is affirmed with 3 *per cent.* damages and costs.

J. *Rariden* and J. S. *Newman,* for the plaintiff.
M. M. *Ray,* for the defendant.

(1) "To induce a Court of equity to decree the specific performance of an agreement, it must be supported by a valuable, or a meritorious consideration. At law, when the contract is under seal, it may be enforced, although no consideration is shown; for the law considers a deed to import a consideration. But equity will

not afford its assistance, although the agreement be under seal, unless a consideration of one of the above species appears." Newl. on Cont. 65. "There are cases, in which equity will decree the specific performance of a contract, though not founded on a valuable consideration. For an agreement by a parent with a child, originating from natural love and affection, and entered into for the purpose of securing a provision for the latter, will be on account of the obligation of parents to provide for their children, enforced by a Court of equity." ·Id. 69. "On the same principle, on which a Court of equity executes an agreement in favour of a child, it will decree the performance of a contract in favour of a wife, though made after marriage." Id. 70. "But where the agreement is, to make a provision for a collateral relation, equity will not, except under particular circumstances, decree the specific performance of it." Id. 71. "But where an agreement is not supported, either by a valuable or a meritorious consideration, but is purely voluntary, equity will not enforce the execution of it." Id. 79. And it seems, that equity will not to the prejudice of creditors, enforce any voluntary agreement, however meritorious its consideration may be. Id. 79.

"To entitle the party to the aid of a Court of chancery, the instrument must be supported by a valuable consideration, or, at least, by what a Court of equity considers a meritorious consideration, as payment of debts, or making a provision for a wife or child." *Minturn* v. *Seymour*, 4 Johns. Ch. R. 497.

A father gave, by parol, a tract of land to his son, and frequently said that he would convey it whenever required. *Held*, that this promise, being founded on no consideration but that of blood, could not be enforced in chancery. *Hickman* v. *Grimes*, 1 Marsh. Ky. Rep. 86.

A man executed an obligation under seal, binding himself to give to his brother a certain tract of land, which, from that time, was occupied by the donee. This obligation was held not to be binding. *Per Curiam.*—"Chancery will not interpose, as between the parties, to set aside a fair and voluntary conveyance; where the equity is equal, the volunteer, having the law, shall prevail. But it is now a clearly settled rule, that chancery will not decree a specific performance of a mere voluntary covenant or agreement without consideration, such as this, to make a conveyance." *Black* v. *Cord*, 2 Harr. & Gill, 100, 103.

Natural affection, though sufficient to raise a use, is not a sufficient consideration for an assumpsit. *Bret* v. *J. S.*, Cro. Eliz. 756, (the leading case on the subject.)—1 Wheat. Selw. 38.

A father gave to his daughter a certificate for seventy-five shares of bank-stock, and endorsed the certificate. After his death, the daughter filed a bill to compel the executor to transfer the stock. The language of the Court, in deciding against the complainant, is as follows:

"The consideration of natural love and affection is sufficient in a deed; but a mere executory contract, that requires a consideration, as a promissory note, cannot be supported on the consideration of blood, or natural love and affection; there must be something more, a valuable consideration, or it is not good and cannot be enforced at law, but may be broken at the will of the party. And being void at law for want of a sufficient consideration, chancery cannot sustain and enforce it." *Pennington* v. *Gittings*, 2 Gill & Johns. 208, 217.

A father executed to his son a promissory note as follows :—"*New-York*, 30th *July*, 1816, sixty days after date, I promise to pay *John L. Fink*, or order, 1,000 dollars, value rec'd.;" and delivered it to the son as a gift. The father died, and

Nov. Term, 1834.

ADAMSON
v.
LAMB.

a suit against his executor was brought on the note by the son. It was held that the action would not lie. The Court referred to *Noble* v. *Smith*, 2 Johns. 52, and *Pearson* v. *Pearson*, 7 Johns. 26, to show that the note was not a gift of so much money, but a mere promise to give,—and concluded their opinion as follows:

"It has been strongly insisted, that the note in the present case, although intended as a gift, can be enforced on the consideration of blood. It is, undoubtedly, a fair presumption, that the testator's inducement to give the note sprang from parental regard. The consideration of blood, or natural love and affection, is sufficient in a deed, against all persons but creditors and *bona fide* purchasers; and yet there is no case where a personal action has been founded on an executory contract, where a consideration was necessary, in which the consideration of blood, or natural love and affection, has been held sufficient. In such a case the consideration must be a valuable one, for the benefit of the promisor, or to the trouble, loss, or prejudice of the promisee. The note here manifested a mere intention to give the 1,000 dollars. It was executory, and the promisor had a *locus pœnitentiæ*. It was an engagement to give, and not a gift. None of the cases cited by the plaintiff's counsel maintain the position, that, because a parent, from love and natural affection, engages to give his son money, or a chattel, such a promise can be enforced at law." *Per Spencer*, Ch. J. *Fink* v. *Cox*, 18 Johns. 145, 149.