Rucker, &c.
vs
Abell et al.

---

CHANCERY.

Case 142.

September 22.

## Rucker, for Levick, &c. vs Abell *et al.*

### ERROR TO THE MEADE CIRCUIT.

*Fraudulent conveyances. Gifts. Voluntary conveyances.*

JUDGE SIMPSON delivered the opinion of the Court.

ALTHOUGH Robert Abell, the son of Samuel Abell, sets up and relies upon a contract with his father, for the purchase of the tract of land, alledged to have been fraudulently conveyed to him, in violation of the rights of his father's creditors, yet he introduces no testimony to establish the existence of any such contract. On the contrary, all the evidence in the cause, proves that the land was a gift to him by his father, and not the subject of sale for a valuable consideration.

As then his right to the land depends on a gift merely by parol, and not consummated by deed until after the time his father became unable, on account of his liabilities, to give land to his children, without a violation of good faith to his creditors, the question occurs, whether the conveyance when made, shall relate back to the time of the original gift, or shall be regarded as taking effect merely from the time of its execution?

When the verbal gift was made, and the son placed in the possession of the land, the father was unembarrassed in a pecuniary point of view, and his condition then was such as to justify the gift, without any imputation of fraud. But when the gift was consummated by a conveyance, his condition was changed. He had incurred extensive liabilities as a surety for another son, which threatened to involve him in complete and utter

*A voluntary conveyance by a grantor to his children when indebted, though it be in compliance with a previous verbal promise made when unembarrassed, is not valied.*

bankruptcy. And at the same time that this convey-
ance was made, all his landed estate was conveyed to
other relatives, the whole arrangement having been
evidently made by him to prevent the subjection of his
property to the payment of his liabilities as surety. The
circumstances under which the conveyance was made,
manifest conclusively a fraudulent intent in its execu-
tion, and renders it void as to creditors, unless it can
be sustained by reference to the previous voluntary
promise.

As the land, notwithstanding the verbal gift, belong-
ed to the father until the conveyance was executed; as
the son had no equity arising out of a contract of pur-
chase, and the payment of a valuable consideration, and
as the father retained the right to the land, and had the
power to complete the gift or not at his discretion, it
seems to us that the title of the son must depend upon
the validity of the gift at the time of the conveyance,
and can derive no aid or support from the previous ver-
bal promise. Any other doctrine would enable a father,
by a verbal gift of his land to his children, retaining
the title in himself, either to remain the real, as well as
ostensible proprietor of the property, or by a comple-
tion of the gift, to divest himself of all right and title
to it, whenever circumstances might render it necessa-
ry to do so for the purpose of placing it beyond the
reach of his creditors. Such a power on the part of the
father, the ownership of the property affording him the
means of obtaining a delusive credit, would open a
wide door for the introduction of fraud and imposition
upon creditors.

A verbal gift of land is wholly invalid. It vests no
right in the donee, legal or equitable. The donor still has
the power to consummate the gift or not, at his option.
Being voluntary at its commencement, it is no less vol-
untary at the time of its completion. Until that time
the property belongs to the donor, and is liable for his
debts, or subject to any disposition he may choose to
make of it, not inconsistent with the rights of creditors.
A gift then, merely verbal, being wholly inoperative
until a conveyance is executed, the validity of the trans-

A verbal gift of
land wholly in-
valid, vesting no
right, legal or e-
quitable in the
donee.

RUCKER, &C.
vs
ABELL et al.

action must depend, not upon any antecedent promise, but on the condition of the donor at the time the gift is made effectual.

The fact, that the deed was not made by the father himself, but by his vendor, at his instance, to whom he had paid the purchase money, and whose bond he held for a title, can make no difference in the law of the case. The land was liable to his creditors, although his title to it was only an equitable one, and the law will not permit him, by having the conveyance made to another person, to change the destination of the property and thereby defeat the just claim of his creditors.

But as the son had taken possession of the land under the verbal gift, and made valuable improvements thereon, under the expectation created by the act of the father, that the gift would be consummated, he is in equity, entitled to pay for those improvements, and has a lien upon the land to secure the payment of their value. This lien would exist against the donor, and is valid against creditors. But its amount must be determined by deducting from the value of the improvements a reasonable compensation for the use of the land.

The sale to Robert A. Abell, the brother of Samuel, cannot be sustained against the creditors. The land sold is alledged by the complainant to have been, at the time it was sold, of the value of six or eight dollars per acre. This allegation is not controverted. The price given is less than one half of this value. The purchase is alledged to have been made in trust for Samuel's benefit; this is not denied. The defendant avers that the whole transaction on his part, was fair, done in good faith, and without the intent or imagination of fraud. If this be true, it can only be so on the supposition that the transaction was, in reality, a transfer of the title to secure a loan of money, upon the payment of which the title to the land was to revert to Samuel Abell. The complainant suggests such to have been the nature of the transaction, and requires the defendant to state whether it were so or not. To this call, no response is given in the answer. This conveyance, therefore, must be regarded as a mortgage merely, securing to Robert

The fact that a voluntary conveyance is made by another at the instance of the father, who is embarrassed, to his son, does not render it more valid against his creditors than if made by himself. If he had the equity it was liable to his creditors.

Where a son under a verbal gift from the father, takes possession and improves lands, expecting the gift to be consummated, he is equitably entitled as against creditors, to compensation for such improvements, and can hold a lien upon the land for such improvement, deducting the value of the use.

A. Abell the re-payment of the money advanced by him to Samuel Abell. The testimony shows an advance of one hundred and sixty dollars, and the execution of a note for three hundred. If the note has been paid the amount of the lien of Robert A. Abell on the land, will be four hundred and sixty dollars, with interest from the time the money was paid. If the note has not been paid, his lien on the land will only extend to the amount actually advanced by him, whatever it may be. This fact must be ascertained by a reference to a commissioner.

The Court below was right in subjecting the land given to Nathan Abell, to the payment of his father's debts. The doctrine applied to the gift to the other son, is decisive against the validity of the gift to him. But the Court erred in dismissing the complainant's bill and refusing him any relief against the land conveyed to Robert Abell and Robert A. Abell.

Wherefore, the decree as to said defendants, is reversed and cause remanded, for further proceedings and decree as herein indicated.

*L. Hord and Grigsby* for plaintiffs; *B. Hardin* for defendants.