ROBERT B. HELMS, plaintiff in error, vs. GREEN H. O'BAN-
NON, defendant in error.

[1.] A power of attorney proven before a Justice of the Peace in Texas is suffi-
cient to authorize the conveyance of land under it in this State, under the
Act of 1785. *Cobb*, 165.

[2.] No other addition to the name of the witness proving the power, other than
that of "citizen" of a certain county, is necessary.

[3.] Possession may be looked to certainly by the jury, as evidence of notice,
by a subsequent purchaser.

Is not possession itself notice, so far as to charge the purchaser with a knowl-
edge of defendant's title; to put him upon inquiry, so as to ascertain the
truth?

Ejectment, from Stewart county.  Tried before Judge KID-
DOO, April Term, 1858.

John Doe, on the several demises of Green H. O'Bannon
and Benjamin May, brought suit against Richard Roe, cas-
ual ejector, and Robert B. Helms, tenant in possession, for
lot of land 239, in the 22d district.  Plaintiff, on the trial,
gave in evidence copy plat and grant of said land to said
O'Bannon, and offered in evidence a power of attorney from
O'Bannon of Texas to James R. Butts, of Georgia, to sell
and make titles to the same—said power of attorney purpor-
ting to have been made in Texas.

The subscribing witnesses to said power of attorney made
affidavit before a Justice of the Peace that they saw O'Ban-
non sign and deliver the same, and they attested it; and
the Justice of the Peace states they were known to him
personally.

The Governor of the State of Texas certifies that said Jus-
tice was at the time in commission as such.

Defendant objected to the admission of the said power of
attorney in evidence, on the ground that it had not been
proven in accordance with the Act of 1785, "to render easy
the mode of conveying land, &c."

The Court overruled the objection, and defendant's counsel excepted.

Plaintiff then introduced a deed from Butts, as attorney for O'Bannon, to Benjamin May; and also William R. Hart, as witness, who testified that Helms, in the fall of 1854, went into the possession of the land and had lived there ever since, and was in possession of the same at the time the deed to May was executed, as of his right and property, and closed his case.

The defendant read in evidence the original plat and grant to O'Bannon, and a deed from O'Bannon to D. Jarratt, and a deed from the executors and distributees of the estate of said D. Jarratt to said Helms for said land, for the purpose of showing that at the time the deed to May was executed, Helms was in the adverse possession of said land under color and claim of title, together with other evidence. Defendant also read in evidence a deed from himself to Paramour to 100 acres of the west side of said lot, to show that at the time May got his deed and commenced his action, he was only in possession of one-half of it. Defendant introduced testimony to show the value of clearing and improving, and of the rents, and to substantiate the facts set forth by the deeds, and that defendant was in possession of only one-half the land when plaintiff commenced his action.

The Court charged the jury that if the plaintiff recovered at all, he must recover on the demise in the name of O'Bannon or of May.

And that if they should believe from the evidence that the defendant, Helms, at the time O'Bannon executed the deed to May was in adverse possession, and holding the east half of the lot under color of title and claim of title, and that the deed from the executors of Jarratt was the evidence of color of title, or was color of title, then the plaintiff could not recover on the demise in the name of May, for the deed from

O'Bannon was void under the statute of 32 Henry the 8th against bracey, and buying of titles.

To which charge defendant excepted, and requested the Court to charge the jury:

That if they should, under the law and evidence, find the deed from said O'Bannon to May to be void in consequence of said Helms having been in the adverse holding and possession of said lot of land under color and claim of title, at the time of the execution of said deed, in that case the plaintiff could not recover on the demise in the name of O'Bannon, because the said O'Bannon, on the 5th November, 1833, had conveyed said land by deed and with warranty of title to said Jarratt, although previous to the issue of the grant, and under that view of the case, the jury should find for the defendant the premises in dispute.

Which the Court did then and there refuse to charge, but charged the jury:

That if they should, from the evidence, believe and find that Helms, the defendant, at the time O'Bannon executed the deed to May, was in the adverse holding and possession of said lot of land, or the east half of it, and that under color and claim of title, and that the deed from said O'Bannon was void, still the plaintiff could fall back upon the demise in the name of O'Bannon and recover the premises in dispute on that demise. Although O'Bannon did, on the 5th November, 1833, sell and convey said lot to Jarratt by deed and with warranty of title, previous to the issue of the grant to said lot of land.

To which charge and refusal to charge, counsel excepted.

The jury found for the plaintiff on the demise in the name of O'Bannon. And on these several exceptions defendant's counsel assigns error.

WORRILL, for plaintiff in error.

TUCKER & BEALL, for defendant in error.

Helms vs. O'Bannon.

*By the Court.*—LUMPKIN J. delivering the opinion.

The facts in this case are briefly these. Green H. O'Bannon was the drawer of the lot of land in dispute, which was granted in 1837. In 1833 O'Bannon sold and conveyed the land to one D. Jarratt. In 1854 the Jarratts sold to Helms, the defendant, who commenced building thereon toward the close of that year, and went into possession with his family in the beginning of 1855. In November, 1855, O'Bannon, through James R. Butts, his attorney in fact, conveyed the land to Benjamin May. The deed from O'Bannon to Jarratt is recorded December, 1855; and the deed from O'Bannon to May is recorded in November, 1855. This is an action of ejectment, brought to recover the land from Helms. There are two demises in the declaration—one from O'Bannon, the grantee, the other from May, the vendee of O'Bannon.

The deed from O'Bannon to May is made under a power of attorney executed in Texas. Two objections were made and overruled by the Court as to the power of attorney. One that it is proven before a Justice of the Peace; the other that the certificate of the Justice does not state the addition to the name of the party proving the power. The words of the Act are:

"All bonds, specialties, *letters of attorney,* and other powers in writing, which shall be produced in any Court or before any Justices in this State, the execution whereof being proved by one or more of the witnesses thereunto by affidavit or solemn affirmation in writing before any Governor, Chief Justice, Mayor, or other Justice of either of the United States where such bonds, letters of attorney, or other writings are or shall be made or executed, and accordingly certified and transmitted under the common or public seal of such State, Court, city or place where the said bonds, letters of attorney, or writings are proved, shall be taken and adjudged as sufficient in law as if the witnesses therein named had

been present; and such certification shall be sufficient evidence to the Court and jury for the proof thereof: *Provided* that in every such affidavit or affirmation there shall be expressed the addition of the party making such affidavit or affirmation, and the particular place of their abode." *Cobb*, 165.

To our mind it is clear, that if the deed is proven before a Justice of the Peace of Texas, it is a sufficient compliance with the statute. Had the Act read, before the " Chief Justice" or other Justice, without any intermediate officer being named, the objection would have had much more plausibility. But it is, before the "Chief Justice, *Mayor* or other Justice of either of the United States." The Mayor of a corporate town or city is, in some of the States, a Justice of the Peace *ex officio*. It can hardly be supposed that the Act intended, by naming him first, to elevate him above the Justices of the Supreme Court. For the Act, it will be seen, begins at the highest officer and descends.

The words " *other Justice* of either of the United States" are very broad. They include all others than the Chief Justice in either of the States; and consequently, a Justice of the Peace.

[2.] As to the addition to the name of the witness, that idea might do in 1785, the date of the Act; but all distinctions have long since become obsolete. And " *citizen* resident in Montgomery county" is as full and descriptive as any other language could have been. Surely the addition of Colonel or 'Squire would constitute no addition at this day. We agree with the Court, therefore, that the power to Butts was properly proven.

The Court, amongst other things, charged the jury, at the request of defendant's counsel, that if they believed that Helms was in the adverse possession of the land in controversy, under color of title and claim of right at the date of the deed from O'Bannon to May, that May's deed was void under the statute of 32 Henry 8th; and for giving this

charge the Court will be compelled to reverse the judgment and send the case back, according to its opinion in *Cain & Morris against Monroe*, 23 *Ga. Rep.* 82.

It is needless to consider the third request made by defendant's counsel, and which the Court rightfully refused to give.   But we will examine the charge made in lieu thereof, namely, that notwithstanding the deed from O'Bannon to May might be void, still the plaintiff could fall back upon the demise in the name of said O'Bannon, and recover the premises, although he sold the land in 1833 to Jarratt by deed of warranty.

The Court was looking at this case alone in the light of 8th Henry.   Hence the jury was instructed that the deed from O'Bannon to May was void, provided there was adverse possession in Helms at the time.   But that, nevertheless, the plaintiff might fall back and recover the premises, notwithstanding the conveyance to Jarratt in 1833.

Having held that the statute of Henry 8th was not of force in this State, of course all this view of the case was wrong.   What is the law which should regulate it according to the facts as proven?   It is not true that a recovery could be had in this case upon the demise of O'Bannon.   He sold to Jarratt in 1833.   True, the grant was not taken out till four years afterwards; but this Court has held, and such, no doubt, is the law, that as between O'Bannon and Jarratt, or Helms claiming under Jarratt, there could be no recovery in favor of O'Bannon.   The land was bought by Jarratt twenty-five years ago.   The deed acknowledges, upon its face, the payment of the purchase money.   We must presume it paid after such a lapse of time.   If so, the equity of Helms was complete.   He not only had a title under which he could defend himself according to *Pitts and Bullard;* but one upon which he could maintain ejectment according to the decision of this Court in the case of *Beacham vs. Goodson*, not yet reported.

Well, what is the condition of May, the statute of Henry

8th being out of the way? His deed being recorded first, he could hold against the elder title to Jarrett under the Act of 1837, (*Cobb*, 175) unless he had notice of the prior conveyance. And the same doctrine we apprehend to be true, even if the Act of 1837 had not been passed. For the grant not having issued till four years after the deed to Jarratt, if O'Bannon sold subsequently to May, without knowledge of the previous conveyance to Jarrett, he would hold against Jarratt.

In *Wyatt and others vs. Elam and others,* (23 *Ga. Rep.* 201) this Court held that possession is a fact admissible in evidence, against the person claiming under the younger recorded deed, that the latter purchaser had notice of the older deed at the time when he took the younger; and this under the Act of 1837. Well then, apart from the statute, which does not, perhaps, apply in this case, as one of the deeds was executed since its passage, we have already held, that O'Bannon could not recover of Jarratt, notwithstanding the land was not granted at the time he sold to him. Of course, no one buying of O'Bannon, with knowledge of the previous conveyance, is in any better condition than O'Bannon himself.

[3.] Now we are all clear and unanimous in holding that if May, at the time he purchased of O'Bannon, had knowledge of the previous sale to Jarratt, he is concluded by such notice; and that the possession of Helms claiming under Jarratt may be looked to by the jury as evidence of notice. My brother McDonald thinks there must be actual notice on the part of May of Helms' possession; which actual notice may be inferred by the jury from the fact that May lived in the immediate vicinity of the land, or in any other satisfactory way; while the other members of the Court concur fully in this, they are inclined to think that the doctrine goes further, and to hold that possession itself is notice; so much so, as to charge the purchaser with the knowledge of defendant's title. (2 *Spence's Eq. Jur.* 759 *Note K.*) At any

rate, the purchaser is put on inquiry and bound to ascertain the truth. (1st *Story, Eq. Jur. Section* 400; 4 *New Hampshire*, 397, 404, 405; *Sugden on Vendors*, 1052, 7th *A. E.*, to the same effect. 22 *Maine*, 312, 313. These cases from N. H. and Maine are very strong. In either view of the case, it must be sent back.

Judgment reversed.