### Emily Jones and Others v. Comfort Tyler and Others.

Bill by the widow and heir-at-law of A against the widow, heirs-at-law, and administrator of B (who was the father of A), to compel the conveyance to complainants of certain premises alleged to have been given by B to A, in consideration of natural affection, but not conveyed,—*Held*, That in such a case conveyance would be decreed only on the most conclusive proof of the gift, and of some satisfactory reason why it was not consummated by a conveyance.

The statements of a person since deceased can no more be made evidence on behalf of his representatives, than they could have been on his own behalf, if living.

Possession of the premises by A, subsequent to the alleged gift, can not avail complainants when it is sufficiently explained by the relationship of father and son existing between the parties.

A mortgagee of B, subsequent to the alleged gift, but not charged with notice of it, could not, in any event, be affected thereby.

*Submitted May 19th. Decided May 21st.*

Appeal from St. Joseph Circuit in Chancery.

The bill of complaint avers: That one Job Tyler, in 1841 or 1842, in consideration of love and affection, gave his son, De Witt C. Tyler, in fee, certain premises described therein: That pursuant to said gift, De Witt went into possession of the premises, and made large improvements thereon, and finally died in possession thereof in the year 1850, leaving the complainants his widow and heir-at-law: That Job Tyler is since deceased: That said Job Tyler frequently promised to execute, and intended to execute, a deed of said premises

to De Witt, and permitted said De Witt to make improvements thereon under an agreement that he would execute to him such deed: That defendant Asa Bennett has been appointed administrator on the estate of Job Tyler, and the other defendants, except Hamden A. Hecox, who claims some interest in the premises as mortgagee of Job Tyler, are the widow and heirs-at-law of said Job. And the bill prays that defendants be decreed to release and convey to complainant all their interests in said premises.

Bennett, the administrator of Job Tyler, answered the bill, denying the alleged gift, and claiming that the improvements made by De Witt Tyler upon the premises in question were made for and at the expense of said Job Tyler. Bennett subsequently died, and an administrator *de bonis non* being appointed, was substituted as defendant in his stead. Two of the other defendants were infants, and answered by their guardian *ad litem*, and the bill was taken as confessed by the others.

On the hearing in the court below, the court dismissed the bill, and complainants appealed.

The following is the substance of the testimony on behalf of complainant:

*Charles L. Miller* knew De Witt C. and Job Tyler in their lifetime. Knows the premises that De Witt C. Tyler occupied in his lifetime; knew him in the occupation of the premises, two or three years continuously, before his death. The premises were located near Job Tyler's residence, a short distance southeast, on the opposite side of the road. De Witt occupied eighty acres of land. He was in debt to me, and a short time before his death, Job Tyler told me that he (Job) had given De Witt the land which he occupied, and that was all he could do for him. These remarks were made by Job in a conversation with him by me, in relation to De Witt C. Tyler being able to pay his debts, at the public house in Centerville. De Witt, at the time of this conversation, occupied the land above spoken of. I always had the

impression that De Witt owned the land, and credited him, him on the strength of it.

*Charles F. Dickinson* knows the premises occupied by De Witt before his death; they are the same spoken of by Miller. Knew De Witt in possession of those premises for six or seven years immediately preceding his death. The land was wild and unbroken when he moved on to it. De Witt built the log house now upon the premises. Should think over forty acres of said land had been broken up and cultivated since he went on to it. De Witt managed and controlled the improvement of the premises. There is a tolerable good fence around the outside of said land; cross fences are not much, if any. There is a small orchard, peach trees and cherry trees, on the premises. Let De Witt have a team to break up a part of said premises, and he worked for witness to pay for the use of the team; he also had cattle of witness to draw brick for a chimney to the house on the premises. He paid for the use of the cattle for that job. Job Tyler, all this time, occupied premises of his own, near by.

At the time De Witt lived upon the premises, witness supposed he owned them—his father told witness he did. At the time De Witt had team of witness, his father helped him in breaking said land—some three or four acres; that being all that was done when he had the team. He had one or two yoke of oxen; his father had, witness thinks, two yoke, and the oxen of witness, and one other yoke, constituted the breaking team. Job and De Witt exchanged work frequently. There has been no improvement on said land since De Witt's death. Was at De Witt's house when he was at work chinking it up, and at work about the roof. The house was raised by the neighbors. De Witt asked witness to attend the raising.

*Rensselaer Strong* had known De Witt in possession of the premises from 1841, '2, or '3, until his death in 1850. Saw De Witt Tyler making rails and laying them up into

fence; also, when he was cutting logs for house. Saw him at work on the premises all along for the time he was living on them. About the time De Witt commenced working on said land, witness had a conversation with Job, in which he (Job) said, I have given that land to De Witt. What brought up the subject was, that De Witt was then at work on said land, in sight. He said De Witt had been a good boy in helping him get started, and that that land was for him (De Witt) to make him a home. At the time De Witt went into occupation of said premises, the land was worth about two dollars and one-half per acre. The premises now are worth about one thousand dollars. There has been no improvement on said land, as witness knows of, since De Witt's death. There are about sixty acres improved; the fences were put up in pretty good order all around said land. De Witt always, and in all places, claimed to own said land, and witness never heard it disputed until after both De Witt and Job Tyler were dead.

*Stephen C. Cleveland* knows the premises. Witness broke twenty acres on those premises for De Witt, eight or nine years ago. De Witt Tyler paid for said breaking.

*John B. Dickey* attended De Witt in his last sickness. De Witt told witness that he had no deed for his place; that he could obtain one from his father any time he had a mind to call for it; that he had perfect confidence in his father; that if he should die, his father would do right in the matter. This conversation occurred the summer before his death. Witness had other conversations on the same subject with De Witt. Witness repeated the language that De Witt had used, as above specified, to Job Tyler, who made no reply.

*Asher Bonham,* in the August previous to the death of De Witt, was applied to by the latter to make a deed from Job to him, of the premises he (De Witt) then lived on; he (De Witt) saying that his father had been ready a long time to give him a deed of the premises. Witness

told Job Tyler what De Witt had told him, soon after it occurred. Job said that any time that De Witt was ready to pay the expense of making a deed, he would execute it. Witness never made the deed, — the times were so busy, cutting hay, &c., that it was omitted, and he (De Witt) died soon after.

There was some little other evidence in relation to improvements made by De Witt on the premises, and to his statements that he was the owner.

*H. H. Riley*, for complainants.

*P. M. Smith*, and *C. Upson*, for the administrator.

MARTIN Ch. J.:

There is no evidence in this case clearly establishing the fact that Job Tyler ever gave, or agreed to convey, the property in question to his son De Witt. That he sold it, there is no pretence. As against the widow and heirs of Job Tyler, a decree for a conveyance would be made only on the most conclusive proof of the gift, and of some satisfactory reason why it was not consummated by a conveyance, even if upon the case made by the bill relief would, in any case, be granted. The statements of Job Tyler which are relied upon to sustain the complainants' case, are loose, indefinite statements, that he had given the land to his son; in one instance made to a creditor of that son, who was evidently pressing the father to pay the son's debt; in another, it is accompanied with no evidence explanatory of the occasion of the statement, or of the conversation preceding or following it, from which its full import can be gathered. The evidence of Bonham is the most direct and satisfactory of any, but even this shows no contract or agreement—nothing but an unexecuted intention. The statements of De Witt can no more be considered in behalf of the complainants, than they could in his own ·behalf, were he living, and seeking the conveyance. Nor do we think

his occupancy of the land, and labor performed upon it, any part performance, or regard them as proof of delivery of possession, or of expenses incurred upon the faith of any agreement or offer respecting the land. Their relation of father and son explains this more satisfactorily than the evidence does the complainants' claim. As against Hecox, the mortgagee of these premises, neither the facts, nor the consideration, if the gift were proven, would authorize a decree. — See *Wilson v. Wilson, ante p.* 9.

There was therefore no error in the decree of the court below, and it must be affirmed with costs.

The other Justices concurred.