## MOORE vs. COULTER.

When lands of the United States in the State of Alabama are entered, and paid for to the officers appointed by law for that purpose, the certificate given by the receiver to the purchaser, although no patent appears to have issued, is sufficient evidence of title to the land therein named in the holder to enable him to sue for, recover and hold such land under the same, according to the laws of force in that State.

Complaint, in Floyd Superior Court. Tried before Judge HAMMOND, at the July Term, 1860.

Alfred B. Coulter instituted an action in the Superior Court of Floyd county against John Moore, founded upon the following instrument, to wit:

"State of Georgia, Floyd county: Six months after date, I promise to pay Alfred B. Coulter, or bearer, two thousand dollars for value received, which may be discharged by making, and executing and delivering to said Coulter, or bearer, good warranty titles, with the patent grant and a full chain of title from the State of Alabama, and under the laws thereof, for the following land, to wit: For the east half of the northwest quarter of section number thirty-three, fl, in township number ten, of range number eleven, containing eighty acres; and for the west half of the northeast quarter of section number thirty-three, fl, in township number ten, of range number eleven, containing eighty acres, making one

TITLE SUFFICIENT TO SUPPORT ACTION FOR LAND. "A prima facie title is all that is necessary, at least, until a better outstanding title is shown. In a suit for an injunction, complainants, on showing they have prima facie even an interest in the property, may maintain their bill. In 53 Ga. 454 and 685, this court said "that a plaintiff in ejectment might recover, though he may himself show no title to the jury against one who acquires possession subsequently by a trespass without any lawful right whatever." It is not necessary, even in ejectment suits, that plaintiff should have the entire title, much less in equity. An undivided interest will support title. 3 Wall, and an equitable title

hundred and sixty acres, said land lying and being in Cherokee county, State of Alabama. Given under my hand and seal, February 10th, 1857.    ·(Signed)    JOHN MOORE."

On the trial of said case, the plaintiff introduced the said instrument sued on and closed his evidence.

The defendant introduced in evidence the receipts of Peter J. Walker, receiver, dated 22d of October, 1851, showing that Alfred E. Moore had paid in full for the lands mentioned in the instrument sued on.

These receipts or certificates were, on the 9th of November, 1854, transferred by Alfred E. Moore to John Culberson; and on the 10th of November, 1855, they were transferred by John Culberson to Nathan Moore.

The defendant also proved: That, on the first Tuesday in April or May, 1857, a conversation occurred between the parties, in which the defendant told the plaintiff that Nathan Moore was then present and would make a title to said land, and that the plaintiff replied, that he did not want the title then—that he wanted the defendant to sell or swap said land for him, the plaintiff, to one Summerhill, and that he, plaintiff, would give the defendant fifty dollars to make the trade; that afterwards, in October, 1857, the plaintiff told the defendant that he did not want him to make the trade about the land with Summerhill; that defendant was an illiterate man, and could write but very little, and that the body of the instrument sued on is in the handwriting of the plaintiff.

The defendant, also, introduced in evidence, and tendered to the plaintiff in discharge of the obligations of the instrument a deed, duly executed and proven, made by Alfred E. Moore, conveying the land to the defendant, John Moore, and also a deed from John Moore and his wife, Harriet Moore, also duly executed and proven, conveying the land to the plaintiff, Alfred B. Coulter. The first deed dated first day of December, 1857, and the second deed dated the 12th of January, 1859.

It was admitted on the trial that no patent had ever issued for the land.

The testimony being closed, the jury returned a verdict in favor of the defendant.

Counsel for the plaintiff then moved for a new trial on the following grounds, to wit:

is sufficient to maintain or defeat an action.    39 Ga. 91; 31 Ib. 278; 30 Ib. 553, 632; 29 Ib. 171, 485; 27 Ib. 372; 26 Ib. 132.    A title which is apparently good is sufficient against a mere wrong-doer or trespasser. 3 Wait. 13-20; 15 La. 76."    McArthur & Griffin *v.* Matthewson & Butler, 67 Ga. 143.

PERFECT EQUITY.    "The doctrine of perfect equity as the equivalent of legal title is, so far as we know, restricted to the relation of

1. Because the verdict is contrary to evidence.

2. Because the verdict is contrary to law.

3. Because the Court erred in charging the jury: That an offer to make a title, by defendant, to the land, and plaintiff's waiving it at the time, would authorize the jury to presume that the defendant was able, or could make a good title in compliance with his obligation.

4. Because the Court erred in charging the jury: That the certificates of entry were evidence of title in defendant, as to him individually, but was not sufficient protection against Government claims, they having been objected to as evidence of title in defendant.

5. Because the verdict of the jury was contrary to the following charge of the Court, to wit: "That, although the plaintiff may have waived making title at any time, it was necessary for the defendant to show that, before rendition of judgment on the instrument sued on, he did have a chain of title to said land, and offered to make and deliver the same to the plaintiff, because by the commencement of the suit the defendant was notified that the plaintiff did not intend to abide the alternative expressed in the instrument sued on; that it was necessary that the defendant should have been in a condition, or able, to make and deliver a full chain of title according to the condition or stipulation of the instrument sued on, before the instrument fell due, in order to entitle him to his defence, although the plaintiff may have waived making titles to him at the time of the offer to do so, and that a patent from the United States for the land was necessary to a full chain of titles."

Upon hearing this motion, the presiding Judge passed an order, setting aside the verdict and awarding a new trial, and this decision is the error complained of in this case.

UNDERWOOD & SMITH, for the plaintiff in error.

D. S. PRINTUP, for the defendant in error.

*By the Court.*—LYON, J., delivering the opinion.

The only question in this case, as it has been argued be-

vendor and purchaser. Instances may be seen in the following cases: Pitts *v.* Bullard, 3 Ga. 5; Winter *v.* Jones, 10 Ga. 191; Peterson *v.* Orr, 12 Ga. 464; Bivins *v.* Vinzant, 15 Ga. 521; Goodson *v.* Beacham, 24 Ga. 150; Helms *v.* O'Bannon, 26 Ga. 137; McLeod *v.* Bozeman, Id. 178; Dudley *v.* Bradshaw, 29 Ga. 25; Moore *v.* Coulter, 31 Ga. 282. * * * *
A complete equity arises out of payment of purchase money and the

Moore vs. Coulter.

fore us, is: Are the certificates, issued by the receiver from the land office, for the government price or purchase money, for the land in question, in the State of Alabama, sufficient evidence of title to enable the holder thereof to recover and hold the lands according to the laws of that State? If they are, the plaintiff, Coulter, is not entitled to recover, as it is clear that the defendant has either caused to be made, or offered to do so within time, titles to the plaintiffs under these certificates. We think that these certificates vest the title to the land in the holder, so as to enable him to sue for, recover, and hold the lands under the laws of Alabama. And that the offer of the defendant, Moore, to make, or cause to be made, titles to the plaintiff under the same, was a sufficient compliance with the terms of his agreement to defeat the plaintiff's right to recover the two thousand dollars sued for. By an Act of the State of Alabama, of December 24th, 1812, it is enacted: "That all certificates, issued in pursuance of any Act of Congress, by any of the boards of commissioners, register of a land office, or any other person duly authorized to issue such certificates upon any warrant, or order of survey, or to any donation or preemption claimants for any lands in this Territory, shall be taken and received as vesting a full, complete and legal title in the person in whose favor the said certificate is granted to the lands therein mentioned, and his, her or their assigns, so far as to enable the holder of such certificates to maintain any action thereon, and the same shall be received in evidence as such in any Court in this Territory." *Toulmin's Dig. Laws of Ala.* 248. This Act is substantially incorporated in the Code of Alabama, and is, so far as we have been able to see, now the law of that State. See §2292, *Alabama Code, p.* 426. Although these certificates are not within the words of these Acts, yet they are manifestly within their sense, and must be judged of accordingly. Without going through the various Acts of Congress, to see what are the duties and powers of the receiver, and the legal effect of these certificates, it will be sufficient to dispose of this question to refer to an adjudication of the Supreme Court of the United States, in which the duties and powers of that officer, and the effect of these certificates as evidence of titles are pretty fully stated. I refer to the case of *Carroll vs. Safford,* 3 *How. S. C.* 441. The lands in controversy in that case were in a

like, out of a consideration beneficial to the former owner, to him who parts with title, not to him who acquires it. It looks to what has been done for another, not to what one has done for himself by inducement of another." Howell *v.* Ellsberry, 79 Ga. 480-1.

like situation to these in this case; that is, the lands had been entered, paid for and certificates given by the receiver, as in this case. Afterwards, and before patents issued, taxes were assessed on the lands, and they were sold for the payment. On a bill filed to set aside this tax-sale, on the ground that the lands were not subject to assessment of taxes, as the titles were in the Government and not in the holder of the certificate, the Court held, that, "When the land was purchased and paid for, it was no longer the property of the United States, but of the purchaser. He held for it a final certificate, which could no more be cancelled by the United States than a patent." "It is said that the fee is not in the purchaser, but in the United States until the patent shall be issued. This is so technically at law, but not in equity." "The land in the hands of the purchaser is real estate, descends to his heirs. Now, why can not such property be taxed by its proper denomination, as real estate? In the words of the statute: as lands owned by non-residents?" Again— "Now, lands which have been sold by the United States, can in no sense be called the property of the United States. They are no more the property of the United States than lands patented. So far as the rights of the purchaser are concerned, they are protected under the patent certificate as fully as under the patent. Suppose the officers of the Government had sold a tract of land, received the purchase money and issued a patent certificate—can it be contended that they could sell it again and convey a good title? They could no more do this than they could sell land a second time which had been previously patented. When sold, the Government, until the patent shall issue, holds the mere legal title for the land in trust for the purchaser, and any second purchaser would take the land charged with the trust."— "The government has no right to refuse a patent to a *bona fide* purchaser of land offered for sale." "The land should be estimated at its full value as the owner having paid for it, is subjected to no additional charge for the obtainment of the patent." It appears, therefore, that the holder of the certificate is in fact the owner of the land mentioned, and if he has not the legal title technically, his is a perfect equity, that, in this State at least, without the aid of such a statute as that of Alabama, is sufficient to support a recovery in ejectment, as has constantly been held by this Court, from *Pitts & Bullard, 3 Kelly,* 5, down to the present time.

Moore vs. Coulter.

As the verdict of the jury was for the defendant, and in accordance with our conviction of the rights of the parties upon the facts, the judgment of the Court below, in granting a new trial, must be reversed.

There is another view of this case that has been neither argued by counsel nor considered by this Court, but to which I desire to call attention of those interested in the question:

The facts show that the parties had exchanged lands, or agreed to do so. The defendant agreeing to give this tract in Alabama for one that the plaintiff owned in Georgia somewhere, perhaps, and this agreement was given by the defendant to the plaintiff as an assurance that he would properly convey the same to him, in execution of that contract, precisely as a bond for titles is given, and for the same purposes. In this sense—and what other can the transaction have—what is the two thousand dollars specified but a penalty? And how can it be recovered in this form, when it can not be in any other? Is not the plaintiff's damages in this as it is in all other like cases—what he has actually sustained and no more—and that is the value of the land in case no title is or can be made? I merely throw out these questions as suggestions of my own, which, in my opinion, must have controlled the plaintiff's right to recover, had we come to a different conclusion on the case as argued.

## JUDGMENT.

Whereupon, it is considered and adjudged by the Court, that the judgment of the Court below be reversed, upon the ground that the Court erred in granting a new trial in this case.