DOE, *ex dem.* H. G. H. MILLER, plaintiff in error, *vs.* ROE, casual ejector, and JOHN N. SWIFT, defendants in error.

An action of ejectment was instituted by the vendee of a tract of land against the vendor, the lessor of the plaintiff claiming under a bond for titles, executed by the party in possession of the land, and one-half *only* of the purchase-money having been paid : *Held,* that the vendee of land, claiming under a bond for titles, cannot maintain an action of ejectment against the vendor thereof until the full amount of the purchase-money has been paid; or, at least, an *unconditional* tender of the amount due for the land shall have been made to the vendor thereof.

Ejectment. Non-suit. By Judge POPE. DeKalb Superior Court. October Term, 1868.

So much of what occurred at the trial of this cause as is necessary, is this :

Plaintiff's attorneys read in evidence a bond made in said county by Swift to Miller, on the 22nd of July, 1863, in which Swift acknowledged that Miller had, that day, paid him $2,000 00, and had given to him two notes, one for $4,000 00, due on the 25th of December, 1863, and the other for $6,000 00, due on the 25th of December, 1864, with interest from the 25th of December, 1863, and bound himself to make to Miller or his executors and administra- tors, title to certain land therein described, (the premises in dispute,) when those notes were paid. Miller then testified that he paid the $2,000 00 in cash, and the 4,000 00 note all in Confederate currency, stating the several payments to have been as follows : $460 00 on the 14th of August, 1863; $1,500 00 on the 27th of August, 1863; $1,300 00 on the 10th of September, 1863 ; $250 00 on the 22nd of September, 1863, and the balance afterwards ; that, though nothing was said at the time of the purchase, about the currency ; he understood that he was to pay Confederate currency, that when he paid off said note, he told Swift that he had' more money, and could get more in a few days, and if Swift wished he would soon pay off the $6,000 00 note, that Swift replied

that he had no use for more money then, and did not wish him to pay the other note then.

He produced the $6,000 00 note. He explained how it came into his possession; that it was sent to him by mail, by Swift, pursuant to what Swift said was a rescinding of the trade, but what Miller said was not so, because of an alleged mistake which he had made in writing to Swift.

He put in evidence a letter from Swift to him, dated the 16th of December, 1864, in which Swift said: "I write to make you a proposition relative to our trade of property at Lithonia," (the premises in dispute,) " as your note will be due in a short time, and I presume you will wish to close it out in some way. 1st. I am willing to let your note stand until the close of the war, and receive pay in good currency. 2nd. Or I will receive Confederate money on a gold basis; that is, I will receive it at what it is worth at this time, allowing the depreciation on Confederate money at the time we traded, which was five to one, and in some localities six to one. Old man Richards sold gold in Augusta last week at thirty-three for one, which would make your note $179,-160 00, after deducting the depreciation at the time we traded. 3rd. I will take the property back, and give you up your note, you losing the amount you have paid. I presume you recollect my proposition last December, and that you refused. * * * *. Since Mr. Morris has possession of the house it is well taken care of, so far as the house goes." * *

They next read in evidence a letter from Miller to Swift, dated 17th of February, 1865, beginning, "Mr. Born informs me you wish to rent the property I bought from you," and then containing the proposition, pursuant to which Swift, on the 13th of February, 1865, sent him the $6,000 00 note, and requested the return of the bond. Because of said alleged mistake in Miller's proposition he did not return the bond, nor accept the $1,200 00 in Confederate currency, which was sent him by Swift, by express, and was still in the express office unclaimed. Miller then offered to testify that he wrote "$1,200 00" in said letter by mistake for $12,000 00, but the Court rejected the testimony.

Another letter from Miller to Swift, dated 25th of February, 1865, in which Miller urged that he had made a mistake, etc., and ending thus : "you need not take possession until I give it to you," and a reply to it, written by Swift on the 9th of March, 1865, were offered in evidence. The Court rejected all of Miller's letter, except : " I will send your money and note back if you don't wish to comply with the terms stated in this," and all of Swift's reply, except : " as to your note and money I sent you, I have no claim or right to ; as for your sending it back to me, if you do, I shall only hold it subject to your order."

MILLER further testified, that he did not pay said $6,000 00 note when it was due, nor ever made any tender of payment, except through Mr. Winn ; that he had not the money to pay it, but handed the note to Mr. Winn, who offered to raise the money and make the tender ; that he fixed upon no amount to be tendered, that he left that to Winn to settle with Swift, but expected it to be the value of the $6,000 00 at the maturity of the note.

WINN then testified, that very shortly before the beginning of this suit he went to Lithonia as the agent and attorney of Miller, to tender to Swift the remainder of the purchase-money, and to endeavor to get title to the premises in dispute; he saw Swift, told him that he had come as agent and attorney of Miller, to pay him the value of the purchase-money yet due, and demand of him the titles to the premises in dispute; that Swift replied that he had no demands against Miller ; that Miller furnished him no money ; he carried about $100 00 in money, and a check on the Atlanta National Bank for $200 00, which the bank had never accepted ; that he carried the check in lieu of the money, as a matter of convenience. Just after Swift's reply to him, Colonel Goldsmith came in, and asked Winn if the money he had was legal tenders, and he thought he said yes ; then Swift said to Winn that if he would accept a tender at all, he would require the gold, to which Winn replied that if he would accept the money he would get the gold. He did not remember whether he had the note when he saw Swift ; Miller had given it to

him. In the conversation, Swift said he considered the matter settled, and Winn urged said mistake. Winn had not fixed in his mind the amount he intended to pay, but left it to be computed between him and Swift, if Swift would accept; he could not state whether he intended to offer the value of the note at its date or at its maturity. Swift said Miller owed him nothing, and did not offer to make the title upon receipt of any amount; Winn understood him to mean not that Miller had paid him, but that the trade had been rescinded. Witness offered to pay as above if Swift would make the title, and not otherwise.

It was shown that the value of the premises ranged from $3,500 00 to $4,500 00 before, during, and since the war, and the annual value for rent was put at from $250 00 to $300 00. With this testimony and the table of values of Confederate money as compared with gold, as published in 34th Georgia Reports, the plaintiff rested his cause.

Upon motion of defendant's attorneys, the Court granted a non-suit, and this is assigned as error.

ALSTON & WINN, A. W. HAMMOND & SON, for plaintiff in error, said, bond for title, possession and purchase-money paid, made a good title, 3 Ga. R., 5; 12, 464; 29, 490. Tender was equivalent to payment, Irwin's Code, sec. 2823; 5th Ga. R., 171; 7th, 254. No tender was necessary because Swift's letter waived it, and as against Miller, he was a wrongdoer, Irwin's Code, sec. 3290, 26 Ga. R., 415.

HILL & CANDLER, L. E. BLECKLEY, for defendant, said nothing short of payment would do, and that the tender was bad because conditional, citing the Code, sec. 2823, and 34 Ga. R., 556.

WARNER, J.

This was an action of ejectment brought by the plaintiff to recover the possession of a certain lot in the town of Lithonia, containing six acres, and certain other lands which Miller, the plaintiff's lessor, alleges he had purchased from Swift, the tenant in possession, in July, 1863. It appears

Miller *vs.* Swift.

from the record that Miller purchased the premises in dispute from Swift, paid part of the purchase-money, and gave his notes to Swift for the balance of the purchase-money, and that Swift made and delivered to Miller his bond, conditioned to make a title to the land to Miller when he should pay the notes given therefor. On the trial of the case in the Court below, upon the evidence offered by the plaintiff, in support of his legal right to recover the premises sued for, the Court non-suited the plaintiff, which decision of the Court is now assigned for error here. Whatever may be the existing equities between the contracting parties growing out of their trade for the land, and their subsequent attempt to rescind the contract therefor, we express no opinion ; but we are all very clear in our judgment that the plaintiff cannot maintain his action of ejectment, to recover the possession of the land against his vendor, until the purchase-money therefor has been paid ; or, at least, until an *unconditional tender thereof* has been made by the purchaser, to the vendor. It is admitted that all the purchase-money due for the land, has not been paid, but the plaintiff relies upon a tender thereof, as set forth in the record. In our judgment, the facts, as proved by Mr. Winn, do not, in law, amount to a legal tender of the balance of the purchase-money due by Miller to Swift for the land : See Code, sec. 2823 ; *Cothran vs. Scanlan*, 34 *Ga. R.*, 555.

Speaking for myself, I think this Court has gone quite far enough in holding that a party, who holds a bond for titles, and has paid *all* the purchase-money, can maintain an action of ejectment upon *that title* for the recovery of the land. In our judgment, there was no error in the Court below in granting the non-suit upon the facts contained in this record.

Let the judgment of the Court below be affirmed.