## Howell *et al.* *vs.* Ellsberry.

Though a gift of land by a father to a son, made without writing, will, after the donee has added valuable improvements upon the faith thereof, be effectuated by a decree of specific performance, the legal title does not pass merely by a parol gift and the making of such improvements. A decree of specific performance, obtained with proper parties before the court, is necessary to pass the legal title so as to recover thereon in ejectment or complaint for land, brought by the heir at law of the donee against a subsequent purchaser from the donor, to whom the latter has conveyed with general warranty of title.

January 23, 1888.

Gifts. Improvements. Specific Performance. Equity. Title. Decrees. Ejectment. Before Judge RICHARD H.

CLARK. Douglas Superior Court. January Adjourned Term, 1887.

Reported in the decision.

T. W. LATHAM, for plaintiff in error.

J. S. JAMES; P. H. BREWSTER, for defendant.

BLECKLEY, Chief Justice.

The action was complaint for land, begun in February, 1884, by Taylor, as guardian of Miss Blanchard, against Howell and Britain. Both parties claimed under T. J. Blanchard, the grandfather of Miss Blanchard; the plaintiff by an alleged gift to her father, Lucius Blanchard, and the defendants by deed of bargain and sale to Howell. The gift, if any, was older than the deed, having been made in 1857, and the deed in April, 1863. Lucius Blanchard, the alleged donee, died in January, 1862, leaving a widow, of whom the plaintiff was born about two months after his death. The widow and daughter were his only heirs at law, and the former administered upon his estate, but did not administer the land now in question or treat it as any part of his estate. She did not claim dower in it, neither has she, so far as appears, ever asserted, by suit or otherwise, any right to it as an heir at law. She married Taylor in the year 1869, and her letters of administration thereby abated. At what time Taylor became the guardian of Miss Blanchard does not appear, nor does it appear why he as guardian commenced the suit after she attained majority. Pending the suit the ward married Ellsberry, and the action proceeded in her acquired name.

The premises embraced in the action consist of three lots of land, and the plaintiff's father had possession of part of them at the time of his death, his home being upon

one of the lots.   Very soon after his death, her grandfather resumed possession, and held it until he conveyed to Howell in 1863, and since that time Howell and his vendee, Britain, have been in continuous possession, Britain holding by bond for titles from Howell, with part of the purchase money paid before he received notice of the plaintiff's claim, and the balance still unpaid.   During the occupancy of Howell and Britain, much of the land has been cleared, fenced and put in a high state of cultivation, valuable buildings erected, etc.   Plaintiff has never had possession; nor has her mother been in possession at any time since the grandfather re-entered in 1862.   The grandfather survived until about the year 1880, and then died testate, but gave nothing to the plaintiff.   Taylor, as guardian, *caveated* the will in behalf of his ward, and failing in that controversy brought this action.   The testator left living children, the wife of Howell being one.   His deed to Howell expresses a money consideration, and warrants title.   The improvements made on the premises by the plaintiff's father consisted of a one-room dwelling-house constructed of split or hewn logs, with stone chimney, worth seventy-five dollars; a kitchen worth fifteen dollars; crib and stable worth twenty dollars; a well worth twenty-five.   The house was on the same site afterwards improved by Howell, and where Britain now resides.   Adjoining lands, in Paulding county, some of them cleared, were embraced in the alleged gift, and also in the conveyance to Howell.   There was only about one acre of cleared land on the premises in Douglas county when Lucius Blanchard, the plaintiff's father, took possession, and when he died.   He made four crops on the Paulding land, while residing on the Douglas land, to-wit, from 1858 to 1861, inclusive.   He paid no rent.

The witnesses to prove the gift were the plaintiff's mother, maternal grandfather, maternal grandmother, and maternal uncle.   They all testified to declarations by the

donor made in the lifetime of the donee, that he had given the land to Lucius; one of them (the grandfather) that in company with witness and Lucius, he selected and pointed out the spot on which to build, and one (the mother) that when in the new house, two or three months after it was built, he said, "Lucius, I give you the place; I want you to go on it and do well." The grandfather and the grandmother also testified to declarations of the donor made after the death of the donee, tending to show that he, the donor, resumed possession for or under the widow; but the widow's testimony, so far from bearing out this theory, indicated that he took possession not only without her consent but contrary to her will, even breaking into the house by force in her absence.

The declaration was in the brief statutory form laid down in the code, annexing an abstract of title which was to the effect that Lucius Blanchard, the plaintiff's father, died in the year 1862 or 1863, seized and possessed of the premises. This abstract was amended by adding thereto, "that before and while the said Lucius Blanchard was in possession of said land, his father, T. J. Blanchard, gave him the premises in dispute, and that the said Lucius Blanchard accepted said gift and went upon said land, and in pursuance to this gift, and made valuable improvements on the same, commencing in the year 1857 or 1858, and continued to improve and occupy, possess and own the land as his own, up to the time of his death in the year 1862, he the said Lucius Blanchard owning and claiming the said property as his own, the title being in him at the time of his death, the improvements placed upon the land by said Lucius."

The court charged the jury (fifteenth ground of the motion for a new trial) that, under the declaration as amended, the action was maintainable in a court of law. The jury found for the plaintiff an undivided half of the premises, with *mesne* profits.

The motion for a new trial sets forth many grounds, one of which is, that the court erred in charging as above indicated; another, that the verdict is contrary to law, etc.

We consider the case ruled by *Hughes vs. Clark*, 67 *Ga.* 19, where the court held that in a claim case, the administrator of a deceased donee, whose right rested on a parol gift from his father followed by valuable improvements made by the son, could not prevail against a *fi. fa.* for year's support to the father's widow and minor children. The question was there directly presented between the legal title of the father as against the gift, and the legal title of the son under the gift; and the ruling was, in effect, that the father, not the son, died seized; that the right of the son was only to have a specific performance decreed, and that such a decree could not be had without all the essential parties were before the court, as well as proper pleadings for the purpose. The court, on page 23, said: " We do not think this voluntary agreement could be set up in a claim at law, but a resort to a court of equity is essential to the attainment of this decree for a specific performance, in order to have all essential parties before the court. Nor would the rule of evidence applicable to claims in a court of law, as to degree, be the same that would be required in a court of equity to have a decree for specific performance. In the latter case, while a court of equity would decree such specific performance by parol proof, yet it should be made out so clearly, strongly and satisfactorily, as to leave no reasonable doubt as to the agreement." Afterwards, in that controversy, the proper proceeding was instituted, the proper parties made, and a decree was had. *Hughes vs. Hughes,* 72 *Ga.* 173.

It cannot be supposed that in ejectment or complaint for land, the equitable elements comprehended in the facts will go further than would the same or like elements in a claim case. Indeed, it has frequently been held that a claim under our statute is in the nature of an equitable

proceeding. *Williams vs. Martin*, 7 *Ga.* 380; *Colquitt vs. Thomas*, 8 *Ga.* 264. If, in favor of the donee, his heirs or representatives, a claim cannot be supported without first or contemporaneously obtaining a decree for specific performance, it follows indubitably that ejectment or complaint cannot be supported without a like accompaniment or preliminary. Here the plaintiff never had possession. She was unborn when her father died, and when her grandfather re-entered upon the premises. Her father had not held seven years, the length of time recognized by the code as needful to raise a conclusive presumption of gift. Code, §2664. There is no instrument of writing to which we can look to see whether the alleged gift to her father was in fee simple or for life only, and no inquest in equity has been had to ascertain that fact or any other. The conduct of her grandfather would indicate that he intended a gift, if at all, only for the life of the donee, and to that interpretation the mother's conduct lends very strong support. That she took no steps as administratrix, dowress or heir at law touching this land, and that no action was brought in behalf of the daughter until the grandfather was no longer alive, are facts quite reconcilable with a gift for life only, but not easily reconciled with the theory of a gift in perpetuity. But whether the gift was of the one or the other nature is matter for inquiry on a bill in equity, or some equivalent proceeding at law, for specific performance. To that inquiry the donor's executor, or, at all events, his heirs at law would be necessary parties. With none but such parties as were before the court in the present case, no decree for specific performance could be had, and in point of fact none was had or even applied for. The effort was to pretermit that stage, and recover upon a supposed perfect equity. But the doctrine of perfect equity as the equivalent of legal title is, so far as we know, restricted to the relation of vendor and purchaser. Instances may be seen in the following cases: *Pitts vs.*

*Bullard*, 3 *Ga.* 5; *Winter vs. Jones*, 10 *Ga.* 191; *Peterson vs. Orr*, 12 *Ga.* 464; *Bivins vs. Vinzant*, 15 *Ga.* 521; *Goodson vs. Beacham*, 24 *Ga.* 150; *Helms vs. O'Bannon*, 26 *Ga.* 137; *McLeod vs Bozeman, Id.* 178; *Dudley vs. Bradshaw*, 29 *Ga.* 25; *Moore vs. Coulter*, 31 *Ga.* 282.

A complete equity arises out of payment of purchase money and the like, out of a consideration beneficial to the former owner, to him who parts with title, not to him who acquires it. It looks to what has been done for another, not to what one has done for himself by inducement of another.

In *Miller vs. Swift*, 39 *Ga.* 95, Judge Warner says: "Speaking for myself, I think this court has gone quite far enough in holding that a party who holds a bond for titles, and has paid all the purchase money, can maintain an action of ejectment upon that title for the recovery of the land." And in *Fahn vs. Bleckley*, 55 *Ga.* 83, Judge Jackson says: "This court has carried the doctrine of the recovery in ejectment upon an equitable title fully as far as it means to go. It has ruled that a bond for titles, with the purchase money fully paid and possession in the purchaser, constitutes a perfect equity on which there can be a recovery in ejectment. It has gone also to the extent of holding that a bond for titles, with purchase money all paid, may constitute such equity without possession in the vendee."

The remedy named in the code, §3187, to effectuate a parol gift of land is specific performance. Doubtless that was the appropriate remedy prior to the code, a remedy consonant to general principles, and widely recognized in the jurisprudence of this country, in cases where the requisite equitable conditions concur. Haines *vs.* Haines, 6 Md. 435; Hardsty *vs.* Richardson, 44 Md. 617; Neale *vs.* Neale, 9 Wall. 1; Freeman *vs.* Freeman, 43 N. Y. (4 Hand,) 34; Kurtz *vs.* Hibner, 55 Ill. 515; Waterman on Specif. Per., §§187, 284, 285. Compare King *vs.* Thompson, 9 Peters, 204; Jones *vs.* Tyler, 6 Mich. 364, Adamson *vs.* Lamb, 3

Blackf. 446; Rucker *vs.* Abell, 8 B. Mon. 566; Boze *vs.* Davis, 14 Texas, 331; Syler *vs.* Eckhart, 1 Burney, 378; Young *vs.* Glendenning, 6 Watts, 509; Burns *vs.* Sutherland, 7 Barr, 103.

As the plaintiff showed no title to the premises on which she could recover in the action, it was error not to grant the motion for a new trial.

Judgment reversed.