## BROWN *v.* HOOKS, and *vice versa.*

1. A was a creditor of C at the time of the latter's death. C left surviving him one child, a married daughter, who was his sole heir at law, and who had two children at the time of the death of C. In his last will and testament C devised a life-estate in certain lands to his daughter, with the remainder in fee to her children. The daughter asserted title in fee to the lands adversely to the will, contending that the instrument was, upon certain grounds, invalid and inoperative. A advanced to the daughter of C a sum of money sufficient to pay off the debts of the estate, taking her obligation secured by mortgage and certain personal sureties, whom A afterwards voluntarily released, for the repayment of the money advanced. Subsequently, during the lifetime of the daughter, the mortgage was foreclosed; and when the land was brought to sale under the mortgage foreclosure A became the purchaser, and entered into possession of the land. Subsequently the will of C, after a contest in the courts made by caveat filed when the will was propounded for probate, was duly probated in solemn form. The daughter of C, the life-tenant under the provisions of the will, having died, her children brought ejectment to recover the land, with mesne profits. Among other defenses, A contended that he was entitled to be subrogated to the rights of the creditors of the estate of C whose claims had been paid off by the money which he had advanced, as stated above. *Held,* that under the facts of the case A was not brought within any of the classes of persons entitled to subrogation as against the interests of the remaindermen, and the court below erred in rendering judgment in his favor upon this contention.

2. Having held that the doctrine of subrogation should not be applied, under the facts of this case, in favor of A, there was no reason why, at the hearing of the case before the auditor, a continuance should have been granted, upon motion made, for the purpose of making the representatives of a deceased codefendant parties, in order that the equities between A and his codefendant might be adjusted, although this codefendant had joined with A in advancing money to pay off the indebtedness of the estate of C and became his partner in the purchase of the realty under the foreclosure proceedings.

3. It appearing that the plaintiffs were remaindermen under the provisions of the will, that the life-estate had terminated, that the action was brought after the probate of the will and fourteen years after the death of the testator, and that there was no executor of this estate and no one ever qualified as such, it was not necessary to show the assent of any executor to the legacies under the will before the plaintiffs could maintain the present action, all the debts of the estate having been paid off and discharged.

4. No prescriptive rights in favor of the defendant had ripened as against the plaintiffs.

Argued February 13,—Decided October 1, 1909.

Complaint for land. Before Judge Littlejohn. Lee superior court. July 22, 1908.

W. W. Hooks, as next friend of his minor children, W. W. Hooks Jr. and Jane Lou Hooks, brought an action of ejectment against S. B. Brown and David Greenfield, to the May term, 1903, of Lee superior court, to recover of defendants a certain eleven-hundred-acre tract of land in Lee county known as the Floyd place, and more particularly described in their declaration; the plaintiffs claiming title to the property under the will of their grandfather, V. A. Clegg, deceased, by the terms of which the testator left the life-estate to their mother, with the remainder to themselves. An abstract of title was added by way of amendment to their declaration. To the declaration as amended the defendants filed a demurrer and answer; also a plea, in which they set up the following equitable reasons why the plaintiffs should not recover the property sued for, to wit: that the mother of the plaintiffs was the only child and heir-at-law of V. A. Clegg at his death; that the property sued for belonged to V. A. Clegg at his death, together with other property, and that he owed at the time of his death $16,723.20; that he left a will, which could not be probated and was abandoned for the reasons alleged; that the said mother administered upon the whole of the said estate except that part given to J. M. McBride and E. L. Kleckley (by way of compromise), who were named as executors and made legatees under the will referred to; that she went into possession thereof, and individually procured S. B. Brown, one of the defendants, to furnish the money with which to pay all the indebtedness of the estate of said V. A. Clegg, and for this purpose procured of him the sum of $13,711.71, giving her individual notes therefor with personal security to S. B. Brown, and executed individually a mortgage to secure this indebtedness on the whole of the estate, less the Kleckley and McBride portions; that in this way all the indebtedness of every nature whatsoever owed by said V. A. Clegg at the day of his death was paid off for the sum $13,711.71, being a reduction of 25% on the face value thereof, secured by the influence of the defendant Brown; that said mother undertook to carry on the farming operations of her deceased father on said estate, and for this purpose she procured a further loan from S. B. Brown, in the sum of $963.34, during the year 1889, being the year that V. A. Clegg died; that she ran the place as her own; that during the years 1890-91 she procured further advances from the defendant Brown, for the purpose of

enabling her to operate the farm; that she failed to pay these advances, as well as the money loaned with which to pay off the indebtedness; that the mortgage given was foreclosed in 1892, and all the property of the estate sold thereunder, except that part given off to Kleckley and McBride, above referred to; that S. B. Brown bought the property under this foreclosure proceeding for $14,000, which was less than the amount due him by the said Susan Elizabeth Hooks; that the property brought in this way its full value; that he bought it in good faith, and he prayed, if this sale did not pass a good title, that he be subrogated to the rights of the original creditors of V. A. Clegg, deceased, showing and attaching itemized bills of expenditures both on account of the debts of V. A. Clegg and the advances made to the mother of the plaintiffs subsequently to the death of V. A. Clegg. By amendment S. B. Brown set up the following legal and equitable defenses: He denied that by the will above referred to V. A. Clegg devised and bequeathed a life-interest in the property to his daughter, Mrs. S. E. Hooks, and the remainder estate to the plaintiffs, and averred that by said instrument the title to the lands in question vested in the executors or their successors in office, for the purpose of working out and paying off the indebtedness against the estate, and that no legatee or devisee was entitled to any legacy until after such payment of the indebtedness by the executors, or, if they failed or refused to act, by the administrator with the will annexed, and then only by the assent of such executor or administrator; and further averred that no assent had ever been given by the executors to the legacies mentioned in the will and claimed by the plaintiffs. He sought to show that complete equity could not be administered and adjudicated without having the legal representatives of David Greenfield made a party, he having died since the plaintiffs' suit was instituted; and he prayed that they be made parties defendant. At the May term, 1905, an order was taken, referring all matters of law and fact involved in the case to J. A. Hixon, Esq., as auditor. The case was further delayed for two years pending the contest over the probate of the will of V. A. Clegg, the defendant Brown having demanded that it be probated in solemn form. The contest having resulted in the will being admitted to probate, Brown, in October, 1907, by way of amendment to his plea and answer, set up the following as further equitable defense: That the will had been

a/bandoned by Kleckley and McBride, the named executors, for the reason, as stated in their renunciation, that the said Clegg was non compos mentis, and that it was upon the representation of these persons and that of W. W. Hooks, who, as next friend of his minor children, is bringing this action in their behalf, and also the expressed opinion of the mother of these plaintiffs that V. A. Clegg was without testamentary capacity, that the defendant Brown, in good faith, advanced the money for the purposes above stated, fully believing that the attempted will was a mere nullity.

All evidence was taken before the auditor, who filed his report containing his findings of fact and his findings and conclusions of law.    To this report exceptions were duly filed by S. B. Brown, and on July 22, 1908, the court overruled each and every exception and affirmed the findings of the auditor, which are in brief as follows:    That Clegg died in 1889; that he was in possession of and owned at the time of his death 5,500 acres of land in Lee county, of which the property sued for is a part; that he left also personalty consisting of mules, wagons, farming implements, mills, etc., of the value of $6,129.00; that he left a will, which, having been probated since the filing of this action, entitles the plaintiffs, as remaindermen, to recover the property sued for; that one of the executors nominated in the will had assented to the legacies in so far as he could do so without qualifying as executor; but that at the time of the advancements and payments made by defendants Brown and Greenfield, as set forth in their plea and shown by the evidence, they were informed and believed that Clegg was without testamentary capacity at the time of his execution of the will, and that acting upon that information and belief they, in good faith, advanced the money for the purposes and in the manner as pleaded by them; that the status was the same when defendant Brown bought in the property under the foreclosure proceedings; **and that** under their plea and these facts Brown and Greenfield are entitled to and should be subrogated to the rights of the creditors against the whole of the estate to the extent of the money actually paid out by them in discharging the debts on the estate; that the whole of the indebtedness was substantially as alleged, and that all debts had been paid off and discharged for a sum equal to three fourths of their face value; that the personalty on the place should be treated as paying debts to its full value, and that the balance of

the indebtedness discharged is a proper charge against the whole of the estate; that the property sued for is but one fifth in amount and in value of the whole estate, and therefore only one fifth of the amount of money furnished for the payment of the entire indebtedness should properly be charged against the plaintiffs; that other proper charges against them are: the amounts paid out by defendants on account of taxes, with interest thereon, and the present value of the improvements placed on the property by defendants; that the plaintiffs should recover of defendant Brown a reasonable annual rental of the property, with interest thereon, for the fourteen and three fourths years since the death of their mother, the life-tenant; that the representatives of David Greenfield, deceased, are not necessary parties, and that a complete accounting should be had between the plaintiffs and defendant Brown, as if no other parties were interested; and that there was no such prescriptive title that had ripened into the defendants by reason of their possession of the property as would defeat the recovery by the plaintiffs. The court accordingly entered up judgment in favor of the plaintiffs for the land sued for, and for the sum of $1,925.56, with interest thereon, as the net mesne profits, after deducting all proper charges against them as above indicated.

E. A. Hawkins, Olin J. Wimberly, Pope & Bennet, and O. B. Morris, for Brown.

Ware G. Martin, James Taylor, and Shipp & Sheppard, contra.

BECK, J. (After stating the foregoing facts.)

1. In the case of Wilkins v. Gibson, 113 Ga. 31 (38 S. E. 384, 84 Am. St. R. 204), Mr. Justice Cobb, speaking for the court, after having discussed numerous cases in which the doctrine of subrogation was under consideration, said: "It is true, as stated above, that some of the courts have extended the doctrine farther than those above referred to. It has been said that subrogation was a 'benevolent' doctrine and equity would apply it in any case in which justice required it; and under sanction of this elastic expression cases can be found where it was applied without the semblance of an agreement. We think the safer and better rule to be, and we therefore hold, that subrogation will arise only in those cases where the party claiming it advanced the money to pay a debt which, in the event of default by the debtor, he would

be bound to pay, or where he had some interest to protect, or where he advanced the money under an agreement, express or implied, made either with the debtor or creditor, that he would be subrogated to the rights and remedies of the creditor. See Ætna Insurance Co. *v.* Middleport, 124 U. S. 534 [8 Sup. Ct. 625, 31 L. ed. 537]." And in the case from which the above extract is quoted, and in the decisions there cited and discussed, will be found a full and elaborate discussion of the doctrine of subrogation, and we do not think it necessary or that it would be profitable to discuss the principle at length in the present case. While it may seem to be a great hardship upon the creditor of the Hooks estate to deny him the application of the principle of subrogation which he invokes, there are no facts in his case which, upon legal or equitable principles, can be relied upon to authorize an extension of the rule. While, at the time of the death of Virgil Clegg, Brown was a creditor of that estate, that fact did not bring him within that class of persons who could be said to have an interest in the estate of Clegg, to protect which it was necessary for him to pay off the debts owing by Clegg at the time of his death. Clearly no conventional subrogation arose in his favor merely from the payment of the debts of the estate, as there was no pretense of agreement between him and the creditors whose debts he paid, nor between him and Mrs. Hooks, that he should be subrogated to the rights of the holders of the debts. And a third consideration, it would seem, renders it conclusive against him that no equitable subrogation could be implied in his favor from the fact of the payment of the debts of the estate, when we consider at whose instance these debts were paid and the security taken for the repayment of the money advanced by Brown to pay the debts. Three important, vital, controlling facts unite in pointing to this conclusion as the only possible one under the evidence in this record and the law applicable to the issues involved: First, while the claims against the estate, as appears from the receipts given or memoranda made upon the accounts and notes, were paid by Brown, he was in fact lending the money to Mrs. Hooks; he became her creditor and she his debtor, and they recognized this relation, as was shown by papers executed by her to secure Brown for the loan made by him. In the second place, this loan was made by Brown to Mrs. Hooks to protect the in-

terest of Mrs. Hooks in the property, as heir at law of V. A. Clegg, and not of the interest which she took under the will,—to aid her in freeing the estate of the deceased from charges against it, and not to protect any interest of the plaintiffs in the present action; for Mrs. Hooks and Brown ignored all possibility of Mrs. Hooks' children, who were remaindermen under the terms of the will of Clegg, having any right whatever in the estate. Mrs. Hooks was claiming adversely to the will, and adversely to any rights that her children might have had under the provisions of the will. Admitting that Mrs. Hooks and Brown acted in good faith, it still stands as a fact that their attitude towards the claims of the plaintiffs in this action was one of hostility to their rights and an absolute denial of the existence of those rights. And the third fact to which we have referred as being of vital importance is, that when Brown advanced the money to pay off the debts against the estate, he took not only Mrs. Hooks' obligation to repay, but also took security—and solvent personal surety—upon that same obligation, which subsequently he voluntarily released. Under such a state of facts as this, under the broadest doctrine of subrogation recognized by the decisions of this court, the defendant in the court below was in no position to invoke the application of the doctrine. Whether Brown would have been in a better position if he had been ignorant of the existence of the will of Clegg which gave to Mrs. Hooks only a life-estate in the property of the testator, with remainder interest to the children, is a question which it is unnecessary to discuss; for it appears from the record that he had knowledge of the existence of the will; and although he may have acted in good faith when he decided that the will was a nullity, when he elected to act on that theory he undertook to decide for himself; he deliberately chose to act upon his own judgment as to a question which he could easily have had submitted to a court of competent jurisdiction, whose decision would have been final and would have afforded him protection. His judgment, as shown by the subsequent proceedings to set up the will, was error; and, like many others similarly situated, he will have to bear the consequences of the mistake that he made, however clearly it may appear that he acted with the best of intentions, and from kind, or even generous motives.

2. Having ruled that the defendant in the court below was

not entitled, under the facts in the case, to be subrogated to the rights of the creditors whose claims he advanced the money to pay off, it follows that Greenfield was not a necessary party to the case. The only purpose for which the defendant could have insisted that Greenfield should be made a party was, that the respective equities of himself and Greenfield should be adjusted in this case; and when the right upon the part of Brown to be subrogated to the claims above referred to is eliminated, all necessity for making the representatives of Greenfield parties to the case is obviated.

3. We do not think it was necessary to show the assent of any executor to the legacies under the will, before the remaindermen could maintain the present action. The plaintiffs were remaindermen under the provisions of the will; the life-estate had terminated; the action was brought fourteen years after the death of the testator, and after the probate of the will. There is no executor of this estate, and no one has ever qualified as such. It appears from the findings of the auditor, and it is not disputed, that the debts of the estate had been paid. That being true, the legal title to this property was in the remaindermen, and they were entitled, by their next friend, to maintain this action.

4. The contention that the defendant had a prescriptive title to the property is without merit. While it is true he had been in possession of the land for seven years under color of title, the plaintiffs in the case were minors, and prescriptive rights could not ripen against them until the expiration of the statutory period after their majority; there being no one charged with the duty of bringing this action prior to the time at which it was actually instituted.

Other exceptions than those dealt with above are made in these two cases, but none of them raise questions of such novelty as would render a discussion of them profitable or interesting. No error appears save that pointed out in the first division of this opinion; and consequently the judgment of the court below is affirmed in the first of the cases as they appear stated at the head of this opinion, and reversed on the other bill of exceptions, upon the grounds of error discussed in the first division of the opinion.

*Judgment in Brown v. Hooks affirmed; in Hooks v. Brown reversed. All the Justices concur.*