CASE-FOWLER LUMBER CO. *et al. v.* BROWN *et al.,*
executors.

1. The court charged the jury as follows: "He alleges that the north line of his line is a well-designated line, being a line east and west through a point one hundred yards north of V. A. Clegg's old miller's house. He brings that contention in issue; but the court charges you as a matter of fact, based on the law and the evidence, that that line is to be regarded by the jury as the true line on the north side of plaintiff's land; and if the defendants crossed that line and took any trees south of that line, then they were trespassers and were liable to him as trespassers, and the only question for you to determine in this case is the amount of damage done to him by the defendants, either or both of them." *Held,* that this was error, because it amounted to a direction of the verdict, which was not demanded by the evidence.

2. Error was also assigned on other excerpts from the charge containing the same vice as that pointed out in the preceding headnote. The above ruling is controlling as to these, and it is unnecessary to discuss them in detail.

3. Movant excepts to other excerpts from the charge dealing with the subject of damages where the defendant is a wilful trespasser. While some of these excerpts show inaccuracies, because not adjusted to the facts of the case, these will doubtless be corrected according to the facts of the case on the next trial.

4. Since there is to be another trial, we will not deal with that ground of the motion which complains that the verdict was excessive; especially since the court, on the hearing of the motion, held that the evidence did not show a wanton and wilful trespass, and required the respondents to write off a portion of the recovery.

5. There was no error in overruling the demurrer to the petition as amended.

No. 2975. SEPTEMBER 15, 1922. REHEARING DENIED SEPTEMBER 27, 1922.

Equitable petition. Before Judge Mathews. Bibb superior court. November 8, 1921.

S. B. Brown filed a petition against G. A. Wallace and Case-Fowler Lumber Co., praying that the defendants be restrained by injunction from cutting timber on certain lands to which petitioner alleged he held title, and for damages from injuries already done.

According to the petition, the land involved consists of "all of those parts of lots of land Nos. 85 and 60 and all of lot No. 49 lying east of Muckalee Creek, all in the first district of Lee County, Georgia, that lie south of a line drawn from a point 100 yards north of V. A. Clegg's old miller's house, and running east and west across said lots Nos. 60 and 85, and 49, and also lot No. 96 in said district, so far as the point where said line strikes the

west side of Coney Lake." In other words, the petitioner contends that the line between plaintiff's and defendants' lands runs across these lots and lies one hundred yards north of the point at which the defendants contend the line is located. It is upon this strip of land that petitioner complained the defendants were trespassing. The petitioner alleges that he is entitled to have the land line as contended for by him recognized and established as the correct one; that he has a perfect title to the land involved; that on March 22, 1892, he and D. Greenfield acquired the title to a large tract of land, including that located both north and south of the line as contended for him under a sheriff's deed made in pursuance of a fi. fa. issued from Lee superior court in favor of S. B. Brown (the petitioner) against L. E. Hooks; that this deed was duly recorded; and that his possession·has been maintained thereunder, he having·acquired the interest.of Greenfield. He alleged that Wallace was asserting some claim of title to the particular strip of land lying 100 yards south of the line as contended for by petitioner; and that Wallace had authorized the Case-Fowler Lumber Co. to cut the timber upon the same, which it was proceeding to do.

In his answer Wallace set up that on November 4, 1909, W. W. Hooks, as next friend of W. W. Hooks Jr. and Janie Lou Hooks, recovered from S. B. Brown (the petitioner) a portion of the land which Brown had acquired under the sheriff's deed, including the strip now involved, the description contained in the judgment in the case mentioned being, in part, " one hundred and forty-two and one half (142-1/2) acres off the northern side of lot number eighty-five (85), 186-1/2 acres off the northern part of lot No. 60, one hundred and one and one half acres off the east side of lot No. 49, all that part of lot number ninety-six (96) being the northwest corner thereof, lying between Coney Lake and the west half of lot number 95 and the north half of lot 85." Wallace contends that this description includes the strip of ground now involved. Subsequently to this judgment the land above described was awarded, in partition proceedings, to W. W. Hooks Jr. et al. Hooks afterward acquired the interest of those who had participated with him in the award in the partition proceeding. On the first Tuesday in January, 1913, the property belonging to W. W. Hooks Jr. was sold at sheriff's sale. Empire

State Guano Company and S. B. Brown became the purchasers of an undivided two-thirds and one-third interest, respectively. Petitioner alleges that the sheriff's deed conveying the property, with respect to the south line, contained the following description: " the south line of said tract being a line 100 yards north of the V. A. Clegg's old miller's house, running east and west across said lots Nos. 60 and 85; which line was announced by the sheriff, at the sale, as being the dividing line between the S. B. Brown lands, on the south, and the above described land, and was agreed on between W. W. Hooks Jr. and S. B. Brown when said Hooks took possession of the same, in said county." This property was sold by the Empire State Guano Company and Brown, the petitioner, to Forrester. The deed by which they conveyed it to him carried the same description as to the south line. Forrester conveyed it, by a deed carrying a similar description, to Wallace. The petition alleges that both Forrester and Wallace were entirely familiar with the tract of land and with the line in question; that while the deed was made by the Empire State Guano Company and Brown to Forrester, Wallace was the real purchaser; that in addition to their general knowledge they were put upon notice of the location of the south line of the tract being purchased by them, by reason of the fact that a deed prepared by them, and presented for signature of the Empire State Guano Company and Brown, omitted the reference to the south line above set out, and execution of the deed was refused until there was incorporated the reference to the south line in the exact terms above set out.

Wallace contends that the action by W. W. Hooks as next friend of W. W. Hooks Jr. and Janie Lou Hooks, against S. B. Brown, was between the same parties, or their privies, and for the same cause of action as that now alleged in plaintiff's petition; that the judgment in that cause was a full and final adjudication of the claim and cause of action now sued upon; that should the line be located as contended for by petitioner, he would not only acquire 350 acres of the southern portion of the lots named, which had been adjudged against him, but he would thereby defraud defendant of lands, the title to which the petitioner had warranted to defendant; that the litigation is only a scheme and effort to reopen the question of title to part of the lands in question, which had already been adjudicated; and that Brown is

estopped in law and equity, for the reasons aforesaid, from rais-
ing the question of title or acreage.

The petitioner conceded, by amendment to his petition, that
W. W. Hooks Jr. and Janie Lou Hooks had recovered from him
the land lying north of the line for which he was contending; but
he asserted that the judgment in that case can constitute no
reason why he should not recover the land and have all the relief
sued for in this case, for sundry reasons unnecessary to be here
stated. The jury returned a verdict as directed, finding the true
line to be as contended for by plaintiff, " a straight line running
east and west through a point 100 yards north of V. A. Clegg's
old miller's house;" that each of the defendants was a wilful
trespasser; that they be perpetually enjoined as prayed; and that
the plaintiff recover of them $7500 damages. A decree was en-
tered accordingly. A motion for new trial was overruled, and the
defendants excepted.

Since the submission of the case in this court the defendant in
error, S. B. Brown, died, and his executors, P. J. Brown et al.,
have been made defendants in error.

*Yeomans & Wilkinson, R. R. Forrester,* and *Jones, Park &
Johnston,* for plaintiffs in error.

*Pope & Bennet, W. G. Martin,* and *A. L. Miller,* contra.

GILBERT, J. On the trial of the case the court charged the jury
as follows: " He alleges that the north line of his line is a well-
designated line, being a line east and west through a point one
hundred yards north of V. A. Clegg's old miller's house. He
brings that contention in issue; but the court charges you as a
matter of fact, based on the law and the evidence, that that line
is to be regarded by the jury as the true line on the north side of
plaintiff's land; and if the defendants crossed that line and took
any trees south of that line, then they were trespassers and were
liable to him as trespassers, and the only question for you to de-
termine in this case is the amount of damage done to him by the
defendants, either or both of them." In the motion for a new
trial error is assigned on this charge, as follows: " (*a*) The court
in said charge instructed the jury where the north line of S. B.
Brown's plantation is located, when there was a conflict in the
evidence as to the location of said line. (*b*) The said charge
withdrew from the jury consideration of the question of whether

S. B. Brown owned any title to said land south of said line, when, as movants contend, there was no evidence showing that S. B. Brown had any legal title to said property, or that he had been in possession under any color of title or by prescription for a sufficient length of time to have ripened into a title." The entire controversy turned upon the question of whether the plaintiff owned the land upon which defendants were cutting timber on lots 49, 60, and 85 in the first district of Lee County. These lots lie adjacent to one another in an east and west line as follows:

The plaintiff contended that he had title to all of these three lots south of an east and west line " drawn from a point 100 yards north of V. A. Clegg's old mill house, and running east and west across said lots 60, 85, and 49." He alleged that the defendants were entitled to cut the timber north of said east and west line. The evidence, without conflict, showed that all of the lands in question, as well as other lots of land, were owned about 1880 and prior thereto by V. A. Clegg, who died leaving a will, under the terms of which the land was devised to his daughter, Mrs. Hooks, for life, and after her death to her two children W. W. Hooks Jr. and Janie Lou Hooks, both of whom, at the death of their mother, in 1889, were minors. Mrs. Hooks, during her life, executed a mortgage to S. B. Brown, which was subsequently foreclosed, and at the sheriff's sale the land was bought in by the mortgagee. Mrs. Hooks died, and about the year 1902 or 1903 her minor children named above, through their father as next friend, brought suit against Brown for the recovery of the land. The suit resulted in a verdict and judgment for the plaintiffs for a number of lots of land, including the lots involved in this case; and the decree restored to the minors, among other lots and parts of lots, the following: " one hundred and one and one half acres off the east side of lot No. 49, 186 1/2 acres off the northern part

of lot No. 60," and " the north half of lot 85." On exception
to the judgment of the trial court the case was brought to this
court, where the judgment in favor of the minors was affirmed.
*Brown* v. *Hooks, 133 Ga.* 345 (65 S. E. 780). Subsequently the
lands were partitioned between the two minor children, and the
lands involved in this case passed, under the award, to W. W.
Hooks Jr., who afterwards executed a deed to G. M. Forman to
secure a loan. On failure to pay the amount due, Forman sued
his claim to judgment. Execution was levied upon the land, and
the same was sold at a sheriff's sale. In the deed to Forman and
in the decree rendered in his favor the portions of the lots named
were described as stated above. At the sheriff's sale these lots,
together with other lots, were bought in by S. B. Brown and Em-
pire State Guano Company, Brown causing the sheriff to include
in his deed, after the description theretofore used, the additional
words " the south line of said tract being a line 100 yards north
of V. A. Clegg's old miller's house, running east and west across
said lots Nos. 60 and 85, which line was announced by the sheriff,
at the sale, as being the dividing line between the S. B. Brown
lands on the south, and the above-described land, and was agreed
on between W. W. Hooks Jr. and S. B. Brown when said Hooks
took possession of the same in said county." Brown and the Em-
pire State Guano Company subsequently sold the land to R. R. For-
rester, who in turn sold to the defendant Wallace. In each of
the latter deeds the same provision was included as to the line
on the south running 100 yards north of Clegg's old miller's
house, as in the sheriff's deed to Brown and the guano company.
It was contended by the plaintiff that his title to the portions of
land claimed was based on prescription, his possession dating
back to the purchase under the mortgage foreclosure against Mrs.
Hooks, the mother of the plaintiffs. It is not decided whether
Brown held title to any parts of lots 60 and 85 south of the said
east and west line. The defendants are estopped by the recitals in
the deeds from claiming any of such land south of said line in
lots 60 and 85. On the other hand the deeds show that Brown
had no title to any part of the east half of lot 49. The charge
quoted above was clearly error, because of its bearing on lot 49.
The plaintiff recovered a judgment against the defendants for
timber cut on lot 49, and a decree that the line was as claimed by

plaintiff. Under the pleadings the plaintiff was claiming that the " east and west line " extended through lots 60 and 85 through the eastern portion of lot 49. The charge complained of, construed in connection with petition, directed the jury to find that the line between the plaintiff and the defendants ran through all three of the lots at the point claimed by the plaintiff. By reference to the deeds from Brown and the Empire State Guano Company to Forrester, and from Forrester to Wallace, and the lease of Wallace to the Case-Fowler Lumber Company, it will be observed that all of the east half of lot 49 was granted in each instance. The reference to the " east and west line " only stated that it ran through lots 60 and 85. The omission to state in the deed that it ran through lot 49 furnishes a clear inference that the grantor did not intend that the conveyance should have that effect. Under the instructions complained of, the jury must have included in their verdict damages for cutting timber in the east half of lot 49 south of the aforesaid east and west line. This was contrary to the evidence and hurtful to the movants, requiring the grant of a new trial.

The remaining headnotes do not require elaboration.

*Judgment reversed. All the Justices concur.*