## CITIZENS MERCANTILE COMPANY v. EASOM.

1. The payment of a debt secured by deed to land revests in the grantor in such deed such interest and title therein as can be levied upon under an execution issuing upon a judgment junior in date to such deed, without a reconveyance of the land to the grantor, and, in case of cancellation, without the record of the cancellation of the security deed.

(a) Quære, whether an entry upon a security deed in which full payment of the secured debt is acknowledged and cancellation of the deed is authorized is such cancellation as is required under section 3309 of the Civil Code.

2. Where one purchases land encumbered by two security deeds and by a judgment junior to such security deeds, on which execution has issued and has been properly recorded on the general execution docket, under an agreement by which he is to pay for the land the amount of the debts secured by such deeds, and in pursuance of such agreement does pay such debts, but receives from the seller no conveyance, and thereafter the land is levied upon under such execution, the purchaser is not entitled to be subrogated to the rights of the holders of such debts, there being no agreement between such holders and himself, or between the debtor and himself, by which he is to be subrogated to the rights and titles of the grantees in such deeds, the purchaser having constructive, if not actual, notice of the existence of such junior judgment.

No. 4356.   July 19, 1924.

Claim.   Before Judge Yeomans.   Early superior court.   April 10, 1924.

An execution in favor of the Citizens Mercantile Company against Mrs. R. A. Easom was levied upon a described tract of land as the property of the defendant in fi. fa. Otho Easom filed his claim to this property. By agreement between the parties the trial of the claim was submitted to the trial judge, without the intervention of a jury, upon an agreed statement of facts and the testimony of the claimant. That statement of facts is as follows:

"On December 29, 1914, the defendant in fi. fa., Mrs. R. A. Easom, who is the same person as Mrs. Emma Easom, acquired title, under a deed made to her as grantee by one J. S. Barnett as grantor, said deed being recorded on February 19, 1915, in Deed Book 30, page 13, in the office of the clerk of the superior court of Early County, to the following described real estate: a tract of land in the 26th district of Early County, Georgia, containing 65 acres, described as follows: beginning at a point on the east line of lot of land number 124 in said district, said point being 22 yards south of the northeast corner of said lot of land number 124, thence due west across said lot of land to the west line thereof,

thence north to the land of the estate of J. J. Hill, thence east 76-¾ yards, thence north 115 yards to line of Ben Easom, thence east 143-½ yards, thence south 315 yards to dividing line of Jesse Easom and Mattie Lou Easom, thence east to the east line of lot number 125, thence due south to point of beginning, sixty (60) acres of said land lying in lot number 125 and five (5) acres lying in lot number 124. She remained in possession of said lands until January 1, 1923, such possession being continuous from the date of said deed. On December 27, 1922, the Citizens Mercantile Company obtained a judgment against said Mrs. Easom, in the city court of Blakely, of Early County, for $327.08 principal, $31.61 as interest thereon to the date of judgment, $35.86 as attorney's fees, and $13.85 as costs of court. Execution regularly issued on this judgment on December 27, 1922, and was on the same day duly recorded on page 75 of general execution docket No. 3 in the office of the clerk of the superior court of Early County. On the day that this execution issued the said Mrs. Easom owned and was in possession of the lands above described, but the Bank of Donalsonville held two certain security deeds, passing title to said land into them, over said land, each of said security deeds being executed by Mrs. Easom to said bank, the one dated November 15, 1921, recorded on November 30, 1921, in Mortgage Book SS, page 401, in said clerk's office, and the other dated December 10, 1921, recorded on December 21, 1921, in the same book in said office, on page 411 of said mortgage book. The first of said security deeds was given to secure an indebtedness of Mrs. Easom to the bank of $224.86, and the latter an indebtedness of $102.50. Neither of said security deeds has ever been cancelled of record, and neither of them has ever been presented to the clerk of the superior court of Early County for the purpose of having it cancelled of record. Each of said security deeds bears two entries endorsed on the back thereof, which entries were all made by I. R. Aultman, assistant cashier of the Bank of Donalsonville, on the dates they purport to have been made. Said entries are as follows on each deed: 'The debt secured by this deed being paid, cancellation of same is hereby authorized. This 28th day of March, 1923. Bank of Donalsonville (Donalsonville, Ga.) I. R. Aultman, Asst. Cashier.' 'Georgia, Seminole County. On March 28th, 1923, Otho Easom paid Bank of Donalsonville the debt secured by within deed, request-

ing that we enter cancellation on same. Now, on September 10, 1923, comes Otho Easom with the original papers without exercising cancellation of same, and now requests us to transfer same to him, as request for cancellation was asked by him in error, and that what he desired was a transfer, he having paid the debt to us. Now for value received on March 28, 1923, we to-day transfer the within deed to Otho Easom, with all rights and privileges as well as the land therein conveyed, without recourse on us. This September 10, 1923. Bank of Donalsonville, By I. R. Aultman, Asst. Cashier. Witnesses: Jos. P. Howard, H. G. Rawls, N. P.'

"That on August 24, 1923, said above-described land was levied on by S. W. Howell, deputy sheriff of Early County, under and by virtue of the execution above described in favor of the Citizens Mercantile Company against Mrs. R. A. Easom, said land being levied upon as the property of said Mrs. Easom. That I. R. Aultman, cashier of the Bank of Donalsonville, a corporation, on the 28th day of March, 1923, and continuously since that time, and that the assistant cashier of said bank had authority to receive for said bank any money due it, and to mark any security deed held by said bank, or in which said bank was grantee, paid or satisfied, and to authorize the cancellation thereof for said bank, and to make transfers of security deeds held by said bank."

The claimant testified as follows: On March 28, 1923, I paid the Bank of Donalsonville the full amounts due it by my mother, Mrs. R. A. Easom, who is the same person as Mrs. Emma Easom, said amounts being represented by notes secured by two certain security deeds. These two security deeds are those described and referred to in the agreed statement of facts in this case. The money I thus paid the bank was my own. I had a farm that my father had given me, and I put it in the "long loan" and borrowed money on it. I paid off the security deeds of my mother's at the Bank of Donalsonville with part of the proceeds from this "long loan" I had made on my own farm. As soon as I paid these two security [deeds] off, I went into possession of the land described in the security deeds, and have been continuously in possession of it ever since that time. My mother and I knew that the two security deeds to the bank had to be paid; and my mother told me that if I wanted to pay them off I could have the land described in the security deeds, that she did not think that any of the other

children would object. My mother and I did not have any agreement that if I paid the bank the amounts due it under these two security deeds I could have the two deeds transferred to me; nor did I have any agreement with the bank at the time I paid the two deeds off, nor prior to that date, that I should have the two security deeds transferred to me. However, it was satisfactory with my mother and with the bank that I pay them off. My mother did not ask me to pay the security deeds off, but told me that if I did pay them off I could have the land described in them. My mother was with me when I paid them off at the bank's place of business in Donalsonville on March 28, 1923. As soon as I paid the bank, Mr. Aultman, the assistant cashier to whom I paid the money, handed me the two security deeds, each having on it an entry he made at the time, reciting that they had been paid. After I took possession of the land the Citizens Mercantile Company had it levied on under their fi. fa. against my mother. Subsequently I carried the two security deeds to the bank and had Mr. Altman, the assistant cashier, make new entries on the back of the deeds for the purpose of having them transferred to me by the bank. With the exception of the entry of filing on the back of each of these deeds, these two entries are the only entries that appear on the back of each of said deeds.

At the conclusion of the evidence, and after argument, the judge found the property not subject; and the plaintiff excepted to this judgment and assigns error thereon on the ground that it was contrary to the evidence and the law.

W. L. Bryan and Lowrey Stone, for plaintiff.

H. G. Rawls, contra.

HINES, J. (After stating the foregoing facts.) Mrs. Easom, the mother of the claimant, owned the tract of land in dispute, which was encumbered by two security deeds in favor of the Bank of Donalsonville, and by a judgment lien, junior to the security deeds, in favor of the Citizens Mercantile Company, on which execution had issued and had been duly recorded on the general execution docket. The mother told the son that, if he would pay the debts secured by these deeds, he could have the land in dispute. The claimant thereupon paid these debts to the Bank of Donalsonville on March 28, 1923. His mother was present when he paid them, but she made no conveyance of this land to the son. The

fi. fa. in favor of the Citizens Mercantile Company was thereafter levied on this land as the property of the defendant in this judgment, and the son thereupon interposed his claim thereto. The trial judge, to whom the case was submitted without the intervention of a jury, adjudged "that the levy be dismissed, and the property therein described be and the same is found not subject." Two questions have been urged by counsel for the plaintiff in error: first, whether the claimant is subrogated to the rights of the bank under its security deeds, by reason of the fact that he paid off the debts thereby secured; and second, whether the defendant in fi. fa. had a leviable interest in this land, under the entries made upon these deeds by the bank, at the time the claimant paid off the debts thereby secured. Counsel for the defendant in error informs us in his brief that the judge found in favor of the claimant on the ground that his mother had no leviable interest in this land at the time of the levy, for the reason that the bank had not reconveyed this property by deed to the defendant in fi. fa.; and so he confines his brief and argument to the second of these questions.

1. We will first consider the second question. When the claimant paid these debts to the bank and requested its cashier to enter on each of the deeds cancellation of the same, the latter made this entry upon each deed: "The debt secured by this deed being paid, cancellation of same is hereby authorized." Each of these entries was dated March 28, 1923, and signed by the Bank of Donalsonville by its cashier. Under this state of facts did the defendant in fi. fa. have a leviable interest in this land? In other words, does the payment of a debt secured by deed put title to the land therein embraced back into the grantor, so that it can be levied on under an execution issued on a judgment junior in date to such deed, without a formal reconveyance of such land by the grantor to the grantee in such security deed? If the debt thus secured had not been paid off, the holder of the junior judgment would have to take up the secured debt with interest, secure a conveyance from the grantee in the security deed to the defendant in fi. fa., and have such conveyance filed and recorded, before he could have his execution levied on the property embraced in the security deed; and the sale of such property under a levy, without compliance with these requisites, would be void. Civil Code (1910), § 6038; *National Bank of Athens* v. *Danforth, 80 Ga. 55* (7 S. E. 546); *Dedge*

v. *Bennett,* 138 *Ga.* 787 (76 S. E. 52) ; *Hogg* v. *Truitt Co.,* 150 *Ga.* 139 (102 S. E. 826). But we do not think that, when the secured debt is paid, these requisites are necessary before a levy can be made on the property embraced in the security deed. The surrender and cancellation of such deed in the same manner that mortgages are cancelled, upon payment of such debt to any person authorized to receive the same, operate to reconvey the title to the property embraced therein to the grantor ; and no reconveyance in such case is necessary. Civil Code (1910), § 3309; *Chapman* v. *Ayer,* 95 *Ga.* 581, 583 (23 S. E. 131). But it is insisted that, before such surrender and cancellation will operate to reconvey the title to the property to the grantor, such cancellation must be entered of record by the clerk of the superior court. This contention is based upon the argument that the cancellation of a security deed is effected in the same manner as the cancellation of a mortgage; and that to effect the cancellation of a mortgage the mortgagor, who has paid it off, must present the same, together with the order of the mortgagee directing that the mortgage be cancelled, have such order written across the face of the record of the mortgage, and have the clerk of the superior court write across the face of the record the word, "satisfied," and date and sign such entry officially. These are the requirements necessary to cancel a mortgage. Civil Code (1910), § 3270. Are all these requisites necessary to effect the cancellation of a security deed? This depends upon the proper construction of section 3309 of the Civil Code. This section seems to treat the cancellation and the record of such cancellation as two separate and distinct things. It seems to treat the order of the grantee in the security deed, acknowledging the receipt of the payment of the secured debt and directing the clerk to cancel the deed, as the cancellation of such deed. It provides that "such cancellation may be entered of record by the clerk of the superior court in the same manner that cancellations of mortgages are now entered." So it seems this section deals with the cancellation of the security deed as a separate and distinct thing from the record of such cancellation; and the record of such cancellation as a separate and distinct thing from the cancellation itself. The language of this section, "cancellation of such deed in the same manner that mortgages are now canceled," may mean that such cancellation shall consist of an

acknowledgment of the payment of the debt and an order from the grantee authorizing or directing the cancellation of the instrument. The proper construction may be, that, when such order is entered upon the security deed, it is the cancellation thereof contemplated by this section. This would seem to be so for the reason that this section further provides that "such cancellation may be entered of record by the clerk of the superior court in the same manner that cancellations of mortgages are now entered."

It would seem that in order to place the paper title in the grantor the cancellation should be entered of record. But we do not think it necessary to decide what is a proper cancellation of a security deed under section 3309 of the Civil Code, in order to have it operate to revest full title in the grantor in the security deed. What we hold is, that payment of the debt secured by such deed vests in the grantor a perfect title to the land thereby conveyed. The full payment of the purchase-money of land, accompanied with possession, gives to the purchaser a legal title. Full payment of the purchase-money invests the purchaser with legal title, and not a mere equitable title. A perfect equity is, in this State, a good title even at law, and is sufficient to support or defeat ejectment. *Pitts* v. *McWhorter,* 3 *Ga.* 5 (46 Am. D. 405) ; *Peterson* v. *Orr,* 12 *Ga.* 464 (58 Am. D. 484) ; *May* v. *Sorrell,* 153 *Ga.* 47, 52 (111 S. E. 810) ; *Elrod* v. *Bagley,* 154 *Ga.* 670 (115 S. E. 3). It logically follows that full payment of the secured debt revests in the grantor the title to the property therein conveyed; and this being so, the grantor in such deed, after such full payment of the secured debt, has a leviable interest in the land therein embraced. We are aware that this court has held that "the doctrine of perfect equity as the equivalent of legal title is, so far as we know, restricted to the relation of vendor and purchaser" (*Howell* v. *Ellsberry,* 79 *Ga.* 475, 480, 5 S. E. 96) ; but in that and in similar cases this court was dealing with the equities of donees and persons occupying similar relations. The relation of grantor and grantee in a security deed is so near of kin to that of vendor and purchaser that the doctrine of a perfect equity being equivalent to a legal title should be applied.

2. Is the claimant entitled to be subrogated to the rights and title of the grantee in these security deeds by reason of the fact that he paid them off as the full price which he was to pay for

this land? This court has denied that subrogation is a benevolent doctrine, and that equity will apply it in any case in which justice required; and this court has refused to follow the cases which were based on this theory of the doctrine of subrogation. On the contrary it has held "that subrogation will arise only in those cases where the party claiming it advanced the money to pay a debt which, in the event of default by the debtor, he would be bound to pay, or where he had some interest to protect, or where he advanced the money under an agreement, express or implied, made either with the debtor or creditor, that he would be subrogated to the rights and remedies of the creditor." *Wilkins* v. *Gibson,* 113 *Ga.* 31 (38 S. E. 374, 84 Am. St. R. .204) ; *Brown* v. *Hooks,* 133 *Ga.* 345 (65 S. E. 780). The claimant does not make a case which falls within either of these categories. He did not advance money to pay a debt which, in the event of default by the debtor, he would be bound to pay. When he paid the debts secured by these deeds, he did not have any interest in the property embraced therein to protect. He did not pay these debts under an agreement, express or implied, made either with the debtor or the creditor, that he would be subrogated to the rights and remedies of the creditor. On the contrary he expressly declares that he had no such agreement. So he does not make out a case of conventional subrogation. This court has ruled that "where one purchases a certain piece of property against which there are two recorded mortgages, and pays off the senior mortgage out of the purchase-money, and it is cancelled, equity will not, in the absence of an agreement between the parties to that effect, subrogate him to the rights of the senior mortgagee, as against the other incumbrancer, whose lien was subject to the senior mortgage but prior to the purchase." *Ragan* v. *Standard Scale Co.,* 128 *Ga.* 544 (58 S. E. 31). This decision is directly against the contention that the claimant is entitled to be subrogated to the rights of the bank under these security deeds. The ruling is based upon the doctrine that a purchaser cannot be subrogated to the benefits of an encumbrance which he has agreed to pay as part or full consideration of the property purchased. Where the purchaser of real property has constructive notice of an existing junior lien, and where by agreement with his creditor he discharges prior liens in part payment of the purchase-price, the judgment lien becomes a first

lien upon the property, and neither the doctrine of equitable assignment nor subrogation applies. Kahn *v.* McConnell, 37 Okla. 219 (131 Pac. 682, 47 L. R. A. (N. S.) 1189). The decision of this court in *Ragan* v. *Standard Scale Co.,* supra, is supported by many decisions and authorities. Sheldon on Subrogation, § 47; Gulling *v.* Washoe County Bank, 24 Nev. 477 (56 Pac. 580); Kuhn *v.* National Bank of Holton, 74 Kan. 456 (87 Pac. 551, 118 Am. St. R. 332); Hubbard *v.* LeBarron, 110 Ia. 443 (81 N. W. 681); Avon-By-The-Sea Land &c. Co. *v.* McDowell, 71 N. J. Eq. 116 (62 Atl. 865); Bolles *v.* Wade, 4 N. J. Eq. 458; Birke *v.* Abbott, 103 Ind. 1 (1 N. E. 485); Demourelle *v.* Piazza, 77 Miss. 433 (27 So. 623); Browder *v.* Hill, 136 Fed. 821 (69 C. C. A. 499); 27 Am. & Eng. Enc. Law (2nd ed.), 236; Witt *v.* Rice, 90 Ia. 451 (57 N. W. 951); Nelson *v.* Brown, 140 Mo. 580 (41 S. W. 960, 62 Am. St. R. 755); Isensee *v.* Austin, 15 Wash. 352 (46 Pac. 394); 37 Cyc. 375. This case is different from one where a purchaser buys land, takes a deed thereto, and subsequently pays a prior lien on the property; in which case he is subrogated to the rights and remedies of such prior lien as against the lien which is superior to his title. *Simpson* v. *Ennis, 114 Ga.* 202 (39 S. E. 853); *Peagler* v. *Davis, 143 Ga.* 11 (84 S. E. 59, Ann. Cas. 1917A, 232). In such case the purchaser has an interest in the property, and pays off the prior lien to protect such interest. His payment of the prior lien is not a payment of the purchase-money of the property on which the lien exists. As we have seen above, when he pays an incumbrance as part or in full of the purchase-money, he is not entitled either to an assignment of the prior incumbrance or to subrogation to the rights and title of the holder of the prior incumbrance. If the claimant had paid off the debts secured by these deeds and had caused entries to be made on them, reciting such payment and authorizing the cancellation of the deeds, he could not, by subsequent transfers of these instruments by the bank to him, revive said deeds so as to put the title to this land in him.

*Judgment reversed. All the Justices concur, except Russell, C. J., dissenting.*